McCORMICK HARVESTING MACHINE CO. v. JENSEN
ET AL.

[FILED MARCH 11, 1890.]

1. **Sale:** CONTINUING CONTRACT FOR.    Upon the proof in the
record, *held*, that the contract for twine continued in force dur-
ing the season of 1888.

2. ———: ———: BREACH: MEASURE OF DAMAGES.    Where A,
residing in Chicago, contracts to sell a certain quantity of twine
at a stipulated price to B, residing at M., in this state, the twine
"to be shipped by said party of the first part to said agent at
Minden or Holdrege (Neb.) as ordered," for sale at the latter
place, and A fails to comply with his contract, the measure of
damages is the difference between the contract price and the
market value of the twine at the point to which it was to be
shipped, less the cost of transportation thither. (*Louis Cook Mfg.
Co. v. Randall*, 62 Ia., 250; *Cockburn v. Ashland Lumber Co.*, 54
Wis., 619.)

ERROR to the district court for Kearney county.    Tried
below before GASLIN, J.

*St. Clair & McPheely*, for plaintiff in error:

The time of delivery is limited by the terms of the writ-
ten contract to June 10, 1888.    The breach, if any, was
complete on that day, and evidence to fix liability must be
confined to that particular time. (Benjamin, Sales, sec.

McCormick Co. v. Jensen.

1335; *Stewart v. Power*, 12 Kan., 596; *Gray v. Hall*, 29 Id , 704.) No reason is shown which entitles defendants in error to special damages, and under the rule as to the measure of damages, the verdict is unsupported by the evidence.

*L. W. Hague*, and *Stewart & Rose, contra:*

A mutual agreement to postpone performance of an executory contract is valid. (Bishop, Contracts, sec. 76.) Acceptance of what is done under a contract in time and manner different from the terms is binding without a separate consideration. (Id., 805.) Agreement to extend is equivalent to performance at the time stated, and leaves the original contract intact. (*Barton v. Gray*, 24 N. W. Rep., 638; *Erskine v. Johnson*, 23 Neb., 261; *Delaney v. Linder*, 22 Id., 274; *Morris v. Schindler*, 18 Id., 673.) Where delivery is thus postponed, damages for failure to deliver are to be assessed as of the date to which postponement was made. (*Hill v. Smith*, 34 Vt., 535; Wood's Mayne on Damages, 252.) As to the measure of damages: *Cockburn v. Lumber Co.*, 54 Wis., 619; *Louis Cook Mfg. Co. v. Randall*, 62 Ia., 250; *Darst v. Burton*, 47 N. Y., 167; *Messmore v. Shot and Lead Co.*, 40 Id., 430; *Haskell v. Hunter*, 23 Mich., 305; 1 Sutherland, Damages, 107; 2 Id., 367–8 · *Borries v. Hutchinson*, 18 C. B. [N. S.], 445.)

MAXWELL, J.

The plaintiff brought an action against the defendants to recover the sum of $111.39, balance due on account. The account is set out at length in an exhibit attached to the petition and shows debits to the amount of $1,781.24 and credits for $1,669.85.

The defendants admit in their answer that the account as pleaded is correct, but allege that the plaintiff is indebted to them upon a set-off arising from a breach of contract in the sum of $327.27.

On the trial of the cause the jury returned a verdict in favor of the defendants for the sum of $14.48, upon which judgment was rendered.

But two assignments of error are made. First, that the evidence fails to sustain the verdict; and, Second, that there was no adequate proof as to the measure of damages.

The testimony shows that in the spring of 1888 the plaintiff and defendants entered into the following contract:

## "WIRE AND TWINE CONTRACT.

"The McCormick Harvesting Machine Company, a duly organized corporation of the state of Illinois, doing business in the city of Chicago, in said state, party of the first part, and Jensen & Anderson, of Minden, in the county of Kearney, and state of Nebraska, party of the second part, agree and contract this 2d day of May, 1888, as follows, to-wit: Said company hereby appoints said Jensen & Anderson as their sales agents for the sale of their binding wire and twine in the following described territory, to-wit, Minden and vicinity and Holdrege and vicinity, during the season of 1888, in consideration of which said agents agree to purchase and hereby do purchase from said McCormick Harvesting Machine Co. ——— pounds of binding wire and 15,000 lbs. of binding twine of the following marks: 13,000 lbs. Blue Jay; ——— lbs. Pure Sisal; ——— lbs. Pure Manila, to be shipped by said party of the first part to said agents at Minden or Holdrege, as ordered, in the county of Kearney and state of Nebraska, on or before 10th day of June, 1888, for which said agents hereby agree to pay to said party of the first part as follows, to-wit: For all said binding wire ——— cts. per lb., delivered on board the cars in Chicago, to be paid on or before the ——— day of ———, 188–; for all said binding twine, 13 cts. per lb. for Blue Jay; ——— cts. per lb. for Pure Sisal; and ——— cents per lb. for Pure Manila, delivered on board the cars in Chicago, to be paid on or before the 1st day of Nov., 1888.

"It is, however, mutually understood and agreed that the said McCormick Harvesting Machine Company reserves the right to change the above prices at any time by giving said agent written notice of such change, and all orders given after date of such notice shall be subject to such change without invalidating other provisions of this contract.

"Above prices guaranteed during the season of 1888, and any reduction on this grade of twine will be met by us.

"10,000 ♯ 5 ♯ balls.           R. BINFORD,
"5,000 ♯ 4 ♯ balls.                    By CROW,
                          " *General Agent for the*
                          " *McCormick Harvesting Machine Co.*
                                "JENSEN & ANDERSON.

"In case of failure of crops, this contract may be canceled on or before June 1, 188–."

The principal part of the instrument seems to have been printed, but the words "above prices guaranteed during the season of 1888, and any reduction on this grade of twine will be met by us," were in writing and added to the printed form.

The testimony also shows that early in June, 1888, the defendants requested the plaintiff to defer the shipment of twine for a short time, until they obtained a bond from a person named that seems to have been doing business for them; that early in July they requested the shipment of twine, and the agent at Lincoln, Nebraska, did send them 4,930 pounds of twine, and promised the remainder at an early date, and he seems to have made an earnest effort to fulfil the contract. On July 14, 1888, he wrote to the defendants:

"I have telegraphed the company several times in regard to your twine, and it is now on the road and must reach you before Monday."

Two days later he wrote to the defendants:

"GENTLEMEN—I am just in receipt of telegram from the company saying that the twine factories have disappointed them, and that they have just learned that they cannot get the twine to fill your order within the next ten days or two weeks, and as that will be too late for use here I have canceled your order, but I have a car load on the road to this point consisting of Pure Sisal, and have several thousand pounds coming from Nebraska City. Please telegraph me on receipt of this, stating just how few pounds you can get through with in addition to twine shipped you from here, which was 50, 50 # bales, 2,500 #. I will spare you every pound that I possibly can."

There seems to have been but little demand for pure Sisal twine, for reasons stated by one of the witnesses probaby that it was an inferior quality and not in demand. But little of this was purchased.

The parties treated the contract as a continuing one, and such is the plain import of the language that the "above prices (were) guaranteed during the season of 1888." There is no plea or claim that the plaintiff could have filled the contract prior to June 10 of that year, or, indeed, at any time for use during the season of 1888. The evidence, therefore, as to a breach of the contract is sufficient to sustain the verdict.

2. As to the measure of damages. It is claimed on behalf of the plaintiff that the proper measure of damages is the difference in Chicago between the contract price and the price for which the twine could have been purchased, and there being no proof upon that point, that the action must fail. It will be observed that the contract provides that the twine is "to be shipped by said party of the first part to said agent at Minden or Holdrege as ordered." The testimony shows that twine of the varieties named was selling for sixteen and seventeen cents per pound in Minden and Holdrege on the 16th of July of that year, although one witness states that the price was fourteen cents

per pound, but all agree that it was scarce and but little could be had—none at wholesale. The testimony also shows that the defendants could have sold all the twine contracted for if it had been furnished. It appears from the testimony that transportation charges on twine from Chicago to Minden or Holdrege, in car loads, was about sixty cents per one hundred pounds, and about seventy-five cents per one hundred pounds in less than car load lots. This being the state of the proof, the rule in such case is that the measure of damages is the difference between the contract price and the market price at the place where the twine was to be sold by the purchaser, less the cost of transportation thither. In other words, where a party in a distant city, like Chicago, contracts to deliver an article, like twine, to certain parties at a designated point in this state for them to sell, the amount of recovery should be the difference between the contract price in Chicago and the market value at the point designated in the state, less the cost of transportation.

In *Louis Cook Mfg. Co. v. Randall*, 62 Ia., 250, S. C., 17 N. W. Rep., 507, where there had been a breach of contract to deliver certain buggies, the court instructed the jury as to the measure of damages as follows: "If, upon inquiring as before directed, you find that the defendants are entitled to damages, you will then proceed to determine the amount you will allow. The measure of defendants' damages for a refusal to sell them vehicles under the contract is the difference in the contract price of the vehicles refused to be furnished and their market value in the city of Des Moines, with the exclusive privilege of selling that make in the counties named, less the expense of bringing said vehicles from Cincinnati, Ohio, and fitting them up for the Des Moines market." The court held this to be a correct statement of the law. The same rule had previously been applied in a well considered case by the supreme court of Wisconsin, in *Cockburn v. Ashland Lumber Co.*,

54 Wis., 619, S. C., 12 N. W. Rep., 49, and in our view these cases state the law correctly.

It will be observed that the jury allowed but little more than one-third of the alleged set-off, having evidently adopted the lowest estimate of the witnesses, but of this no complaint is made.

There is no error in the record and the judgment is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.