A. HARDY V. MANFORD CURRY *et al., as Partners, etc.*
No. 14,832 (89 Pac. 19.)

SYLLABUS BY THE COURT.

1. PRACTICE, SUPREME COURT—*Transcript of Evidence—Certificate of Stenographer.* The certificate of the stenographer to a transcript of the evidence prepared under section 1 of chapter 320 of the Laws of 1905 is not ineffectual, and the transcript will not be invalid merely because such certificate does not immediately follow the recital of the evidence in the record.

2. ——— *Service of Transcript.* The provision of that act that the case-made shall be served upon opposing parties within ten days after judgment is rendered unless an extension of time is granted does not apply to a transcript.

3. SALE—*Warranty—General Verdict and Special Findings Inconsistent.* In an action to recover for a machine sold upon a warranty, it is *held*, that the special findings of the jury with respect to the performance of the conditions of the contract between the parties are inconsistent with the general verdict and the judgment.

Error from Edwards district court; CHARLES E. LOBDELL, judge. Opinion filed January 5, 1907. Reversed.

*A. C. Dyer,* and *F. Dumont Smith,* for plaintiff in error.

*Prigg & Williams,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: Curry & Lohman, who were operating a thrashing-machine, purchased from A. Hardy a Parsons band-cutter and self-feeder for $245, for which they were to give him two notes payable at different times, one for $125 and the other for $120. The contract of purchase contained a warranty of the machine and stipulations as to the manner of testing it. Among other things it was warranted to be made of good material, and that with good care, proper power and fair usage it would cut bands and feed a thrashing-machine as well or better than any other band-cutter or self-feeder made. There was a provision that if after a trial of three days it was not equal to the warranty notice should be given by the purchasers to the manufacturing company, at Newton, Iowa, and also to the agent from whom the machine was purchased, and a reasonable time thereafter was to be given for a competent person to come and remedy the machine, the purchasers to render all necessary and friendly assistance, and if the machine could not then be made to fill the warranty the purchasers were to return it free of charge to the place where they received it and permit the company to substitute therefor another machine which would fill the warranty. There was also a provision that if the purchasers refused or neglected to render all friendly assistance to the person sent to adjust the machine it should be treated as evidence of the fulfilment of the warranty and of the satisfaction of the purchasers.

The machine was received by Curry & Lohman, who with the assistance of an agent of Hardy undertook to attach it to the thrashing-machine and operate it, but it did not work satisfactorily. An expert from the factory arrived and offered to put the machine in order, but Curry & Lohman would not allow him to do so, nor assist him, unless he would agree that they should be reimbursed for the delay and be paid all the expenses

of the trial in the event that the machine could not be made to work properly. They refused to settle for the machine or to pay the freight thereon as the contract provided, and Hardy brought this action against them, setting up the contract, the furnishing of the machine under it by Hardy and the refusal of the defendants to accept or pay for it, and asking judgment for $253.

The defendants answered with a general denial, and, further, that Hardy was not the real party in interest but was only the agent of the Parsons Band-cutter and Self-feeder Company, and that as agent he made oral agreements as to the furnishing and delivery of the machine which were not complied with. They also set up a claim for damages by reason of the non-compliance with the contract in furnishing an unfit and defective machine, and for the loss of time, the loss of thrashing, and other losses resulting from the delay in not furnishing a machine as the contract required.

On the trial the jury gave a general verdict in favor of the defendants, and at the same time returned the following special findings of fact:

"(1) Ques. Did the defendants try the band-cutter and self-feeder for three days? Ans. No.

"(2) Q. When plaintiff's agent, Lee Hardy, and the expert, Ball, went to the defendants' machine, did the defendants or either of them give the plaintiff and said expert a reasonable time in which to make said band-cutter and self-feeder work? A. No.

"(3) Q. Did the defendants or either of them render the plaintiff's agent and the expert friendly assistance in trying said machine and getting it to work? A. No.

"(4) Q. Did the defendants or either of them request and permit the plaintiff or the Parsons Band-cutter and Self-feeder Company to substitute another machine for the one claimed to be defective? A. No.

"(5) Q. When the plaintiff's agent and the expert, Ball, went to defendants' thrashing-machine did the defendants or either of them refuse to allow the band-cutter to be attached to said machine and tried unless the plaintiff or the Parsons company would pay all expenses of trying the same? A. Yes.

"(6) Q. Did the defendants then and there refuse to give said machine a trial or have it attached and refuse to take it? A. No."

There is a preliminary objection to the sufficiency of the record on which the case is presented. The case is brought up on a transcript of the record instead of a case-made, and the testimony is preserved in accordance with the provisions of section 1 of chapter 320 of the Laws of 1905. The certificate of the official stenographer does not immediately follow the recital of the evidence, but it does specifically refer to the preceding testimony, and is sufficient, we think, for the purpose of identity as well as authentication of the transcribed testimony.

It is said that the transcript of the record was not filed within ten days of the rendition of the judgment, as the act provides. The limitation referred to applies to a case-made and not to a transcript.

There is nothing substantial in the objection that the instructions and proceedings outside of the testimony are not shown to have been filed in the office of the clerk. They appear to have been in the custody of the clerk and a part of the files of his office. He transcribed them and certifies that they constitute part of the record, and that with the other matters included they make up "a full, true and correct transcript of the record in the case, . . . as the same remains of file in my office." From the appearance of the record it is likely that the stenographer transcribed and brought to the clerk, not only the testimony, but copies of the pleadings and all other proceedings in the case, and upon this document the clerk placed the ordinary filing mark. It can be safely said that the proceedings transcribed are a part of the files of the clerk's office.

On the merits it is clear from the special findings that the verdict and judgment cannot be upheld. The testimony is to the effect that the machine when tried did not work well. Under the contract, the execution of which was admitted and which was binding alike on

both parties, it was then the duty of the defendants to give the manufacturing company and also the person who sold the machine notice of the defect, but the trial court rightly held that the giving of this notice ·was waived by the plaintiff. It was then incumbent on the defendants to give the expert of the manufacturing company an opportunity to remedy the difficulty—to replace any parts—and to give him all necessary and friendly assistance. If he was unable to make it work or fulfil the warranty the defendants were to return the machine and then request and permit the substitution of 'another machine that would fill the warranty. As will be observed, the jury have found that the defendants failed to perform their part of the contract, and the findings are clearly inconsistent with the general verdict. For instance, it has been found that the defendants did not give the machine the three days' trial, but as the test made appears to have developed defects, and as the expert was sent to remedy them, this default is no longer material. But it was expressly found that the defendants did not give the expert procured by plaintiff a reasonable time in which to make the machine work, and did not render him the friendly assistance to make it work which the contract required. It was also found that they did not request or permit the substitution of another machine for the one claimed to be defective.

It is not easy to understand how the verdict was given under the instructions of the trial court. The jury were advised that these conditions of the contract were binding upon the defendants, and that even if the machine did not work well the failure of the defendants to do the things required of them would entitle the plaintiff to recover. There was also an instruction that if the expert came within a reasonable time to remedy the machine, and offered to put it in order and to make it work, it was the duty of the defendants to help him, without requiring in advance an agreement to reimburse them for any delay which might result from his

efforts to put it in order. There was also an instruc-
tion that if the machine did not do the work for which
it was purchased, and the defendants did their part,
the jury might give the defendants such damages as
they sustained by reason of plaintiff's failure. These
declarations of the court are accepted as the law of the
case; and we think the court should have gone further
and given the requested instruction to the effect that
it was the duty of the defendants to try the machine
"and to render plaintiff's agents friendly assistance in
trying said machine, and if it then failed to work to
request and permit the plaintiff to substitute a new
machine and try that, and they cannot refuse to pay
the contract price of said machine or recover damages
for its failure to work unless they have so substantially
complied with the contract on their part."

It is argued that under the pleadings there was no
contract between defendants and plaintiff; that the
only contract relation was between the defendants and
the manufacturing company, and that for that reason
the verdict was properly given for defendants. There
is some language in the amended petition which fur-
nishes a reason for the contention that Hardy was no
more than an agent for the company. However, when
all the averments of the pleading, including the terms
of the contract, are considered, it is made to appear
that Hardy sold the machine to the defendants and that
their contract was with him. The offer to purchase
was made expressly to Hardy, and not to the company.
It stipulated not only that he should furnish the ma-
chine but that the notes given for it should be made
payable to his order. When he accepted the offer of
defendants it became a binding contract between them.
Nowhere in the contract is he described as an agent,
nor is there any recital that he made the sale as agent.
It is true that Hardy obtained the machine with which
he undertook to fill the order from the manufacturing
company, but it was shown on the trial that he was

7—75 KAN.

primarily liable for the machine and that he had paid the company for it. The allegations of the amended petition as to agency, which it is said were made under the stress of a ruling of the court, explain the relation between Hardy and the manufacturing company and his right to sell the machine in that district, and why the purchasers were required to pay the freight on it from the place of manufacture to the place of delivery.

The case might have been tried on the original petition, however, and in fact it was tried and the jury were instructed substantially as if no amended petition had been filed. We are of the opinion that the contract must be regarded as one between the plaintiff and the defendants, and that the findings of the jury in respect to the obligations of the contract are inconsistent with the general verdict. The special findings are not so complete and harmonious as to justify the rendition of judgment thereon.

It follows that the judgment must be reversed and the cause remanded for a new trial.