(No. 5582. Decided July 27. 1905.)

### J. E. LILLY et al., Respondents, v. LILLY, BOGARDUS & COMPANY, Appellant.[1]

APPEAL—REVIEW—FINDINGS—SALES—EVIDENCE. The findings of the trial court establishing a sale will not be disturbed on appeal when supported by the direct testimony of two witnesses and corroborating circumstances, as against the conflicting evidence of one witness.

FRAUDS, STATUTE OF—SALES—PART PAYMENT. A payment and part performance, sufficient to take an oral sale of 100 tons of hay and oats out of the operation of the statute of frauds, is shown, where two witnesses testify positively that, when the contract was made orally with the president of the vendor on its behalf, over $1,700 in gold dust was delivered to him at Dawson, about $700 of which was in part payment for the goods, and in response to a telegraphic order, the vendor shipped five tons thereof to Dawson.

COMPROMISE AND SETTLEMENT—ACCEPTANCE OF PART—ACCORD AND SATISFACTION. The acceptance of a check for part of the sum claimed does not amount to an accord and satisfaction where, upon an angry dispute over the amount due, the defendant gave the check under a direction from the plaintiff to pay what it was willing, and they would "scrap" over the balance.

1Reported in 81 Pac. 852.

22—39 WASH.

SALES — FAILURE TO DELIVER — MEASURE OF DAMAGES — MARKET
VALUE AT POINT OF DELIVERY. The measure of damages for the failure
of the vendor to deliver hay and oats, sold in Seattle, for shipment
to Alaska before the close of navigation, for resale on the Dawson
market, is the net profit that could have been realized on the Dawson
market, where by reason of the default the vendees were unable to
obtain other goods during the current season.

COSTS—JURY FEE—WAIVER OF JURY AFTER PAYMENT. It is proper
to tax as costs the advance jury fee paid by the prevailing party
prior to a stipulation to waive a jury trial.

Appeal from a judgment of the superior court for King
county, Hatch, J., entered September 8, 1904, upon findings
in favor of the plaintiffs, after a trial before the court, a jury
being waived, in an action on contract. Affirmed.

*Allen, Allen & Stratton,* for appellant.

*John E. Humphries,* for respondents.

HADLEY, J.—On the 4th day of September, 1901, J. E.
Lilly and Frances Lilly, his sister, were copartners under
the firm name of J. E. Lilly & Co., and were engaged in
business at Dawson, Yukon territory. As such firm, they
bring this action against Lilly, Bogardus & Co., a corpora-
tion, organized under the laws of this state, having its prin-
cipal place of business at Seattle. The complaint avers, that
on the date above named the defendant, through its duly
authorized agent, Charles H. Lilly, its president, sold to
plaintiffs, at Dawson, fifty tons of hay and fifty tons of
oats, and, as part of the contract of sale, undertook and
agreed orally with plaintiffs to ship the oats and hay from
Seattle to the plaintiffs at Dawson; that the defendant further
agreed that the directions for said shipment should be im-
mediately sent by telegraph, by its said agent, from Dawson
to Seattle; and that the shipments should be made as soon
as practicable in the ordinary course of business; also, that
it was agreed that the price to be paid should be the prevail-
ing market price of hay and oats in the open market, in
Seattle, on the day of the receipt by defendant in Seattle

of the telegraphic directions regarding the shipments; that said telegraphic instructions were sent to defendant from Dawson, by its said agent, on the 4th day of September, and were received by it on the 11th day of September. Averments are made as to the price of hay and oats in the open market in Seattle on the last named date. It is also averred that, on the 9th day of said month, the plaintiffs paid to defendant the sum of $1,769.68, and that it was then agreed that the said sum should be applied and used by defendant as follows: $1,075 was to be applied on an account then owing from plaintiffs to defendant for twenty-five tons of hay and twenty-five tons of oats previously purchased, and the remainder of said payment, amounting to $694.68, was to be applied and credited as part payment in advance on account of said fifty tons of hay and fifty tons of oats purchased as aforesaid.

It is further alleged that the defendant shipped to the plaintiffs, of the said fifty tons of hay, five tons and no more, which five tons were duly received by plaintiffs under said contract of purchase, and as a part of said shipment of fifty tons of hay and fifty tons of oats; that said hay and oats were purchased by plaintiffs to be sold by them in the Dawson market, which fact was well known by defendant at the time of the purchase; that, on and after the date of said purchase, the only available route for the said shipment was by ocean freight from Seattle to Skagway, thence by the White Pass railroad to White Horse, and from the latter place to Dawson by river steamers; that this route of shipment is usually closed about the 25th of October in each year, all of which facts were well known to the defendant at the time of said sale, and were taken into consideration in making said contract; that it was further known to the defendant that it would be necessary to use reasonable diligence to obtain prompt shipment in order that the same might reach the plaintiffs before the close of shipments by said route, and that, in consideration of the purchase, the

part payment thereon, and the agreement to pay the full
purchase price, the defendant agreed to use reasonable dili-
gence in shipping so that plaintiffs could receive the ship-
ment by said route before it was closed. It is alleged that
the defendant did not use any diligence, and that it made no
effort whatever to make the shipment other than the five tons
of hay aforesaid, and that no shipment was made other than
as above stated.

Averments are made as to the amount of freight, duty and
handling charges the plaintiffs would have been required to
pay, if said shipment had been made; also, as to the market
value of hay and oats in Dawson at the time the shipment
should have arrived there, October 25. It is alleged that,
from the time the sale was made, and until after said October
25, the defendant led the plaintiffs to believe that it would
fulfill its said contract, and notified them that all orders had
been filled and all goods shipped. Damages in the sum of
$4,290, and interest thereon, are demanded.

The answer denies many of the material allegations of
the complaint, and affirmatively alleges that the plaintiffs
orally requested the defendant, through its president and
representative who was at Dawson, to ship to them fifty tons
of hay and fifty tons of oats, being the same hay and oats
referred to in the complaint; that said representative then
and there stated to plaintiffs that he did not know whether
it would be possible for defendant to make the shipment, or
whether it would be willing to extend to plaintiffs the de-
sired amount of credit; that it was agreed that defendant's
said president should, by telegraphic message, request de-
fendant to make the shipment, and that it should have the
right to either ship or not ship as it saw fit; that such mes-
sage was sent, but that the defendant was unable to procure
the necessary amount of hay and oats, or the necessary
freight space upon vessels for the shipment; also, that it did
not desire to extend further credit to plaintiffs. It is also
alleged that the agreement relating to the sale was wholly

oral; that the value of the hay and oats exceeded $100; that no part of the purchase price was paid; that no goods were delivered; and that the agreement of sale was therefore within the statute of frauds. The answer also contains a plea of accord and satisfaction, and the affirmative defenses are denied by the reply. The cause was tried by the court without a jury, and resulted in a judgment in favor of plaintiffs in the sum of $2,500. The defendant has appealed.

It is first urged that the court erred in not finding that the order for the one hundred tons was conditional, as alleged in appellant's answer. The court found that the contract of sale was absolute, and without conditions. The record of the evidence is voluminous, including a large amount of oral testimony and a mass of written correspondence. We have laboriously read the statement of facts, and the finding of the court in the above particular is supported by the testimony of the respondents. They are respectively the brother and sister of Charles H. Lilly, the president of appellant corporation, who made the sale in behalf of appellant. Opposed to the testimony of both the respondents is that of their said brother. The court evidently relied upon the testimony of the respondents, which was direct and unequivocal. That of their brother was equally direct at the time of the trial, but from indications appearing in the correspondence that he may not have remembered all the details concerning this sale, it was not necessary that the court should believe that his testimony was intentionally false, but rather that he might have forgotten just what did take place between him and the respondents. The court, after hearing and observing these witnesses during a long and tedious trial, and after considering the correspondence between the parties, reached the conclusion that the respondents' testimony was correct; and we think, under the whole evidence, that we should not be warranted in disturbing the finding.

It is next complained that the court should have found that there was no written memorandum of the sale, no part

delivery of the goods, and no payment made, it being contended that the facts show the contract to have been within the statute of frauds. No specific finding was made as to the first two points above mentioned, but it was expressly found that respondents paid appellant on account of such sale the sum of $694.99. It is admitted that the respondent firm was not indebted to appellant in any sum when Charles H. Lilly, representing appellant, went to Dawson in August, 1901. It is also admitted that on the 30th day of that month respondents purchased from appellant twenty-five tons of hay and twenty-five tons of oats, and that their indebtedness upon that purchase was all they were owing appellant at the time they made the purchase of the one hundred tons, on September 4. It is not disputed that, on September 9, respondents delivered to their brother, Charles H. Lilly, gold dust of the value of $1,769.68. The respondents both testified positively that the delivery was made to their brother as the representative of appellant, and that it was then agreed that appellant should credit them by reason of the delivery of the gold dust with the full value thereof, and that it should be applied to the payment in full of the said purchase of August 30, in the sum of about $1,075, and the balance should be applied upon the indebtedness for the purchase of the one hundred tons. The appellant did afterwards credit respondents with the full value of the ore, as ascertained through the assay office in Seattle. Charles H. Lilly testified that there was no agreement to credit any part of it upon the one-hundred-ton deal. But we think upon this subject, also, that the weight of the evidence sustains the court's finding that a payment was made and received upon that purchase. The court made no finding one way or the other as to whether there was a delivery of any portion of the one hundred tons. We think a finding that there was a delivery of five tons of hay thereon is justified by the evidence. There was such a shipment and delivery that was not ordered through any other deal between the parties. It was shipped at the time

the larger shipment was to be made, and we think it can be accounted for only by reference to that purchase. For the reason, therefore, that there was a part payment, and also part delivery, the contract was not within the statute of frauds.

The next point urged is that the court erred in not finding that there was an accord and satisfaction between the parties. Some time before the bringing of this suit, respondent J. E. Lilly was in the office of appellant, in Seattle, when an offer was made to adjust the differences between respondents and the corporation. Propositions by way of compromise were made by respondent J. E. Lilly, but they were not accepted. Appellant admitted some liability to respondents at that time, but did not take into account any liability by reason of respondents' loss growing out of the failure to complete the one-hundred-ton shipment. J. E. Lilly testified that he finally told appellant to pay what it was willing to pay, and that they would "scrap" over the balance. Appellant then made a check payable to the order of respondent firm for $194.46. No memorandum was made upon the check that it was in full settlement of accounts, and no receipt passed between the parties to that effect. In view of the fact that respondents were then claiming something like $2,600, together with the further fact, appearing in evidence, that a sharp and even angry dispute occurred between the parties just before the check was given, it seems improbable that the giving of the check was the result of an agreed settlement of the differences, in the absence of some note thereon or receipt to that effect. The testimony of J. E. Lilly upon that subject seems reasonable, when viewed in the light of attending circumstances, and we think the court did not err in refusing to find that there was an accord and satisfaction; especially inasmuch as the burden was upon appellant to show that fact.

Appellant contends that the damages allowed were excessive. The sum allowed was a little more than half that demanded by respondents. It is said that to sustain the dam-

ages found they must be measured by the Dawson market; whereas, it is argued that they should be measured by the Seattle market. We think, under the contract, the damages must be measured with reference to the Dawson market. The court found that appellant knew, when the contract was made, that the goods were to be sold in the Dawson market, and that it was necessary for that purpose that they should reach Dawson before the close of navigation for the season. Certainly, respondents' damages must have been the amount of profits that they would have realized from the Dawson market, if the shipment had been made and the goods had arrived there as agreed. They relied upon this expected shipment, were informed that all orders had been shipped, and it was impossible for them to obtain similar goods from any other source, after they learned that the shipment had not been made. Where a party in a distant place sells and agrees to deliver goods at a designated point, where he knows they are to be sold by the vendee, the measure of damages is the difference between the purchase price at the place of purchase and the market value at the point to which they are to be shipped, and where they are to be sold, less cost of transportation and necessary handling and sale expenses. *McCormick Harvesting Mach. Co. v. Jensen,* 29 Neb. 102, 45 N. W. 160; *Campbellsville Lumber Co. v. Bradlee,* 96 Ky. 494, 29 S. W. 313; *Cockburn v. Ashland Lumber Co.,* 54 Wis. 619, 12 N. W. 49; *Booth v. Spuyten etc. Mill Co.,* 60 N. Y. 487; *Johnson v. Allen,* 78 Ala. 387, 56 Am. Rep. 34; *Austrian & Co. v. Springer,* 94 Mich. 343, 54 N. E. 50, 34 Am. St. 350. The amount of damages allowed by the court was within the above rule, and there is ample testimony to support it.

Appellant assigns error in that the court taxed, as a part of respondents' costs, a twelve-dollar jury fee, which they had paid into the registry of the court. Afterwards it was stipulated to try the cause without a jury. Appellant urges that it should not be charged with this cost. The jury fee

was, however, a proper disbursement for respondents to make. It inured to the benefit of appellant and established its right to a jury trial without payment on its part. When it subsequently developed that both parties were willing to try without a jury, respondents could not recall the fee. It therefore became a regular and legal disbursement in the case. Bal. Code, Section 5167, provides that the prevailing party "shall be entitled to his costs and disbursements." It was therefore not error to tax the jury fee in favor of respondents.

The judgment is affirmed.

Mount, C. J., Rudkin, and Crow, JJ., concur.