J. P. BAUMAN *et al., as Partners, etc.,* v. THOMAS McMANUS *et al., as Partners, etc.*

No. 14,839   (89 Pac. 15.)

SYLLABUS BY THE COURT.

1. SALES—*Order Given Traveling Salesman Subject to Approval —Withdrawal before Acceptance.* Since in the absence of evidence to the contrary the presumption is that an order for goods taken by a commercial traveler is subject to approval by the house which he represents, and no contract results until such order is accepted, the proposed buyer has an unqualified right to withdraw such an order at any time before it is accepted.

2. ——— *Acceptance.* Where an order for goods is taken by a traveling salesman and transmitted to his employer, who thereupon writes to the proposed buyer acknowledging the receipt of the order, thanking him for it, and saying that it will receive prompt and careful attention, such communication either is in itself an absolute acceptance of the order or is such an expression as may, in connection with an otherwise unexplained omission for a long time to make any further response, be deemed some evidence from which an acceptance may be inferred; if not conclusively an acceptance, it may be given that effect if the subsequent conduct of the parties indicates that they have each so treated it.

3. ——— *Conduct of the Parties—Evidence of Acceptance.* Such a communication may be regarded as having been interpreted as an acceptance by both parties where it is followed by correspondence between them in which the buyer claims a right to change or cancel the order at any time in virtue of an asserted special agreement made with him by the agent who took it, and the seller denies the existence of such right and the making of such agreement.

4. ——— *Withdrawal of Order before Acceptance—Question for the Jury.* The evidence examined and held not to show conclusively that an attempt was made to withdraw the order here involved before it had been unequivocally accepted.

Error from Harvey district court; PETER J. GALLE, judge. Opinion filed January 5, 1907. Reversed. Opinion denying a rehearing filed March 9, 1907.

*Dale & Amidon,* for plaintiffs in error.
*Bowman & Bowman,* for defendants in error.

The opinion of the court was delivered by

MASON, J.: J. P. Bauman & Sons, wholesale merchants, sued McManus Brothers upon an account for goods sold and delivered upon special order. A demurrer was sustained to the evidence of the plaintiffs and they prosecute error. The evidence tended to show that the defendants gave an order to a traveling salesman of the plaintiffs; that correspondence followed between the parties concerning the matter; and that the goods were shipped but not accepted. The ruling of the trial court was probably based upon the theory that

the plaintiffs' evidence conclusively established that the order taken by their agent required acceptance by his principals before a binding contract could result, and that before it was so accepted the defendants countermanded it. The soundness of this theory is the chief, if not the only, question involved.

There is nothing in the record to suggest that the agent who took the order had or assumed to have any authority to bind the house which he represented beyond that implied from his being a commercial traveler in its employ. Therefore the court was justified in assuming that the order taken by him required acceptance by the plaintiffs before any enforceable agreement could result from it. (6 A. & E. Encycl. of L. 227; 8 Cyc. 334.). It follows that the defendants had a right to recall the order at any time before it was accepted. (9 Cyc. 284; *L. A. Becker Co. v. Alvey* [Ky.], 86 S. W. 974.) Therefore the inquiry narrows down to this: When did the plaintiffs accept it, and when, if ever, did the defendants undertake to withdraw it? The order was given November 11, 1903. Two days later the plaintiffs wrote to the defendants as follows:

"Your kind order through Mr. Schutz is duly to hand and will receive our prompt and careful attention. With thanks we are,                    Very truly,
                         J. P. BAUMAN & SONS."

If this constitutes an acceptance the trial court's ruling was wrong, for up to this time no withdrawal had been attempted. If the letter does not by itself show an acceptance of the order it may be that it is open to interpretation as such in the light of the subsequent conduct of the parties, or it possibly may be deemed one of a number of circumstances which collectively amounted to acceptance. Before undertaking to determine any of these questions it is expedient to exhibit the succeeding steps in the transaction. Nothing further was done until about January 22, 1904, when the defendants wrote a letter to the plaintiffs. Its exact contents are not shown, but a witness described it

as one asking that the order be canceled.  The remainder of the correspondence was as follows:

*(February 1, 1904; plaintiffs to defendants.)*

"Referring to your letter of the 22d ult., beg to say that we have communicated with our Mr. Schutz since the receipt of your letter and we have his assurance that the goods were sold to you without any privilege to cancel.  We received the order early in November and have made up the same, the goods being about completed; and we will ship them by March 1, as per your original instructions."

*(February 3, 1904; defendants to plaintiffs.)*

"Yours to hand.  All goods are bought under guaranteed price; if certain lines can be bettered we reserve the right to do so.  If you ship you do so at your own risk."

*(February 8, 1904; plaintiffs to defendants.)*

"Replying to your letter of the 3d inst., beg to say, we must refer you again to our previous communication.  Our goods are not sold under a price guaranty.  We venture to say there is no garment concern in this country would do business that way.  Our representative, Mr. Schutz, reports that he devoted considerable of his time to you when you made your purchase, and we manufactured your order exactly as given, and will ship the goods March 1, as per your original instructions."

*(March 4, 1904; defendants to plaintiffs.)*

"We herewith return bill of goods you are sending us contrary to our instructions.  In shipping these goods you are doing so, as we notified you, at your own peril.  We will not accept them now under any conditions.  You may do just as you please about them, and besides this we do not wish any further correspondence in the matter."

*(March 17, 1904; plaintiffs to defendants.)*

"We have your letter of the 4th inst. returning our invoice, and in reply to same beg to say that when our invoice is due and payable we shall expect payment therefor.  We want to state that we cannot afford to take an order to be made up specially for anybody, and accept cancelation over two months after the order is given, when the goods are practically ready for shipment. . . .  We beg to reenclose invoice, and trust you will reconsider the matter."

Recurring now to the question of the legal effect of the letter of November 13, it may be said that while no express statement was therein made that the order would be filled the phraseology was such as would naturally lead the recipient to suppose that to be what the writer meant. In *Rees v. Warwick,* 2 B. & Ald. (Eng.) 113, it was held that where one was notified that a bill of exchange had been drawn upon him, and replied that it should "have attention," the phrase did not as a matter of law import the acceptance of the bill. But the ruling was based, as appears from the quotation from the opinion made in *Bank v. Bank,* 74 Kan. 606, 87 Pac. 746, largely upon considerations growing out of the fact that the transaction had to do with negotiable paper, on which account especial exactness of language was necessary and a strict construction of it proper. More nearly in point is *Manier & Co. v. Appling,* 112 Ala. 663, 20 South. 978, where it was held that no acceptance of an order such as was given in the present case resulted from an acknowledgment of its receipt coupled with the words "the same shall have prompt attention." On this matter the court said:

"Unless the words 'the same shall have prompt attention' are deflected from their natural, ordinary meaning, they cannot be construed into an acceptance of the proposal of the plaintiff, converting the two into a concluded or completed contract. The operative words are *attention* and *prompt.* The latter, when read in connection with the term of the proposal that the shoes should be shipped on the succeeding 15th of June, signifies, and was intended to signify, no more than that *attention* would be given in time to meet this term. If given within that time, it was as speedy as the nature or necessities of the transaction required. Promise to give the proposal *attention* was not a promise of acceptance; it was not an assent to it. It was no more than a courteous promise to give it *consideration,* and this we do not doubt is the sense in which it is generally, if not universally, employed in transactions of this character. *Attention,* according to Webster, signifies 'the act or state of attending or heeding,' and, further, 'notice; exclusive or special consideration.'

And of the meanings attached to it in the Century Dictionary are: 'Consideration; observant care; notice; as your letter has just arrived, and will receive early attention.' In the interpretation of all writings, whether contractual or not, the relation of the parties and the subject-matter must be considered.

"The words and phrases of the writing must be referred to the subject-matter and these relations, for they give rise to the occasion for their use or employment. The plaintiff was negotiating for the purchase of the shoes, stating the terms upon which he was willing to purchase. There was no legal duty resting upon the defendants to enter into the negotiation; they could have been silent, and silence would have been refusal to become parties to it. They could have become parties to it, and converted it into a contract, by an absolute, unconditional acceptance of the proposal of the plaintiff. But it was by such an acceptance only the proposal could have passed the stage of negotiation; there could have been no change or variation of the terms of the proposal; such change or variation would have involved further negotiation. Considering that the parties were standing in these relations, and the subject-matter of the proposal of the plaintiff, referring the words of the response of the defendants to them, it would contravene the intention of the defendants, drawing them into legal relations they did not intend to assume, if those words were rendered contractual, and not as indicating that the proposal of the plaintiff would receive consideration; that it would not pass unheeded." (Page 668.)

On the other hand, in *Jordan, Marsh & Co. v. Patterson et al.*, 67 Conn. 473, 35 Atl. 521, the trial court was reversed for submitting to the jury the question whether a letter acknowledging the receipt of several orders for goods amounted to an acceptance, the reviewing court holding that it had that effect as a matter of law. The letter merely contained the words "we are in receipt of the following contracts, for which we thank you," (page 477) followed by a description of the orders by numbers and amounts. A portion of the syllabus in *Parlin & Orendorff Co. v. Boatman*, 84 Mo. App. 67, reads as follows:

"A contract between a traveling salesman and a

merchant provided for the principal's acceptance to make it binding. His letter to the merchant expressing appreciation of the order and wishing him a nice trade in the goods was a sufficient acceptance."

In the opinion it was said:

"The plaintiff's letter of January 31 discloses, in effect, an approval by it of the contracts as made by defendant, for else why did it enclose the guarantee bond for execution and express its appreciation of defendant's order, and hope that the latter would 'have a nice trade on our line of goods.' The language of this letter clearly indicates that the plaintiff approved the contracts as made by defendant and its traveling salesman. The contract was thereby completed." (Page 73.)

The logic of the portion of the opinion in *Manier & Co. v. Appling,* 112 Ala. 663, 20 South. 978, above quoted, from the standpoint of the grammarian and verbal precisian, is unassailable; but it may be questioned whether so literal, narrow and technical a construction ought to be put upon such an ordinary business communication as the response to a solicited order for goods. The letter of the plaintiffs in this case is very similar to that considered by the Alabama court, yet such differences as exist are of a kind to give the one here involved more the character of an acceptance. The promise that the order shall receive prompt and *careful* attention seems to imply something more than that the manufacturers will quickly and cautiously investigate the advisability of accepting it. The care they might expend in that direction—in looking up the defendants' financial standing, for instance —is not presumably a matter in which any one but themselves would be greatly interested. The engagement to use care seems more naturally to relate to the manner of filling the order than to the settling of a doubt whether to fill it at all. The expression of thanks for the favor has some tendency in the same direction. We incline strongly to the opinion that the letter, standing by itself, was as effectual to close a contract as though in set phrase it had said that the goods would

Bauman v. McManus.

be shipped; that to permit any other construction to be placed upon it would be to countenance the studied use of equivocal expressions, with a set purpose, if an advantage may thereby be derived, to keep the word of promise to the ear and break it to the hope.

It is not necessary at this time, however, to pass upon this question, for the present case is affected by other considerations. The goods were ordered for delivery March 1. From the time the receipt of the order was acknowledged, November 13, 1903, until January 22, 1904, a period of seventy days, extending to within thirty-eight days of the time fixed for shipment, no communication on the subject passed between the parties. If on January 21 the plaintiffs had undertaken to reject the order, could they have been heard to say that their letter and their long silence had not already accomplished its acceptance? The relations of the parties were reciprocal. If one was bound the other was. It was at least a fair matter for the consideration of the jury whether the delay was not so great, under all the circumstances, as to be inconsistent with the theory of non-acceptance. Further than this, the exact purport of the defendants' letter of January 22 is not shown, but from the references to it in other writings the inference may be drawn that it was not a specific countermand of the order for the goods. When the plaintiffs wrote their letter of February 1 they unquestionably committed themselves to the acceptance of the order, if they had not previously done so. Then, if not before, a contract was completed. No subsequent countermand could be effective, and no earlier one is disclosed by the record.

Moreover, the letters of the plaintiffs and the defendants gave unmistakable evidence that upon each side it was considered that the order had been accepted when its receipt was acknowledged. The plaintiffs showed this by their repeated denials of the defendants' right to withdraw it, and the defendants by ba-

sing their claim to such right, not upon any theory that they had exercised it before their order had been accepted, but upon the sole and specific contention that in virtue of a special arrangement with the salesman they had reserved the privilege of canceling it even after its acceptance. In their letter of February 3 they say that the goods were bought under a guaranteed price and that if certain lines could be bettered they reserved the right to do so; that if the plaintiffs shipped the goods they would do so at their own risk. This is inconsistent with the position now taken. It was not even a specific direction not to ship; nor was any such direction given before the actual shipment. (See; in this connection, *Pitcher & Manda v. Lowe,* 95 Ga. 423, 22 S. E. 678, and *Single Paper Co. v. Hammermill Paper Co.,* 96 N. Y. Supr. Ct., App. Div., 89 N. Y. Supp. 116.)

Under these circumstances it is clear that the evidence of plaintiffs made a *prima facie* case, and that the sustaining of the demurrer on the theory that the order had been withdrawn before it was accepted was erroneous for at least three reasons: First, because, if the letter of the plaintiffs of November 13 was not a definite acceptance, it at all events, when coupled with the fact of entire silence for over two months, afforded some evidence from which acceptance could be inferred; second, because the plaintiffs' next letter was an unmistakable acceptance, and so far as the record shows was sent before any explicit countermand was given; and, third, because the letter thanking the defendant for the order and promising to give it careful attention was either an acceptance on its face or was open to that interpretation in view of the subsequent conduct of the parties. The justice of this conclusion is further apparent from the fact that the answer pleaded a special agreement with the agent who took the order that it should be subject to change and cancelation, and the preliminary statement to the jury on behalf of the defendants included a proposal to intro-

duce evidence of a general custom to allow such orders to be canceled at any time before shipment; in neither was there anything to suggest reliance upon a revocation of the order before it was accepted.

The judgment is therefore reversed and the cause remanded for further proceedings in accordance herewith.

---

OPINION DENYING A PETITION FOR A REHEARING.

(89 Pac. 19.)

The opinion of the court was delivered by

MASON, J.: A petition for a rehearing has been filed. It presents nothing which is thought to require any modification of what is said in the opinion, but calls especial attention to several matters not there mentioned, concerning which it is pertinent to add a few words.

The evidence showed that the goods shipped did not correspond exactly with the order, one item (amounting to $18, out of a total of $336.64) being omitted, and several being changed in some minor detail. It is argued that the trial court may have sustained the demurrer for this reason. The defendants are not in a position to take advantage of the failure of the plaintiffs to fill the order with strict accuracy. In their letter of May 4, written after they had received the bill, they made no complaint in this respect, but announced that they would not accept the goods under any conditions. In view of this they could not shift their ground after the action was begun and make a slight variation from its terms a pretext for repudiating the entire contract.

Again, the plaintiffs' salesman gave the defendants a copy of the list of goods at the time they were ordered, made out upon a printed form containing the words: "Styles and prices guaranteed. Subject to change." It is now argued that the ruling of the district court may have been based on this fact. What-

ever force these, expressions may have acquired in com-
mercial usage, they do not on their face carry any
meaning that would enable the defendants by writing
the letters shown in the record to nullify the whole or-
der. Counsel for the defendants practically recognize
this, for they admit that they made no argument to
the contrary at the trial, and in their brief they say:

"While the custom and usage was not plead in de-
fendants' answer, it would have been competent for
the defendants to introduce such testimony, at least to
explain the trade terms: 'Styles and prices guaranteed.
Subject to change.' It did not become necessary for
the defendants to introduce this testimony, as the
plaintiffs' evidence showed that the order was not le-
gally accepted by plaintiffs and that the same was can-
celed by defendants more than five weeks prior to the
time of shipment. . . . It was not necessary for
the defendants to introduce evidence that they had a
right to cancel the order, as the evidence of plaintiffs
showed that the order had not been legally accepted
and that defendants had written plaintiffs to cancel
the same more than five weeks before the time of ship-
ment."

There is a sharp difference of judicial opinion as to
whether the seller should be allowed to maintain an
action for the agreed price of goods ordered, where
prior to their shipment he is informed that the buyer
will not receive them. In many jurisdictions it is held
that under such circumstances his only remedy is to
sue for the damages occasioned by the breach of the
contract. (24 A. & E. Encycl. of L. 1118.) But even
where this rule is accepted he is allowed to seek relief
by either method in cases where he has been required
to manufacture the goods especially for the purpose,
and there was testimony that such was the situation
here. (24 A. & E. Encycl. of L. 1120. See, also, 20
Harv. L. R. 363.) Moreover, the evidence did not con-
clusively show that the defendants distinctly repudi-
ated the order before the goods were shipped, so that
no question of this character is involved in the present
proceeding.

The petition for a rehearing is denied.