[No. 11560.   Department One.   February 20, 1914.]

E. H. BAKER, *Appellant*, v. J. N. SHAW et al., *Respondents*.[1]

SALES—ACTION FOR BREACH—DAMAGES—MEASURE—LOSS OF BAR-GAIN. Upon breach of a contract to sell an established business in the coffee and spice trade, at the wholesale price of the goods, which were to be resold at retail, the purchaser is entitled to recover the loss of his bargain, which is the fair net return on the goods sold at retail; and the business being a profitable one, the seller cannot defend on the ground that the purchaser could not have sold the goods at a profit.

ARBITRATION AND AWARD—EFFECT. Upon breach of a contract to sell an established business, including a lease of the building, damages may not be recovered for loss of the lease, where the contract provided that the value of the lease was to be determined by arbitration, which was done.

[1]Reported in 138 Pac. 888.

SALES—ACTION FOR BREACH—DAMAGES—LOSS OF GOOD WILL. Upon breach of a contract to sell the stock and good will of an established business, at the wholesale price of the goods, damages in the amount of the fair net profit on reselling the goods at retail compensates for the loss of the good will, further allowance for which would be speculative, especially where the seller had agreed to remain out of business for only two years.

Appeal from a judgment of the superior court for King county, Ralston, J., entered June 13, 1913, upon findings in favor of the defendants, in an action on contract. Reversed.

*Trefethen & Grinstead,* for appellant.
*Howard Waterman,* for respondents.

PER CURIAM.—In *Baker v. Shaw,* 68 Wash. 99, 122 Pac. 611, this court held that plaintiff was entitled to recover damages for a breach of the contract therein set out. We there said:

"The record convinces us that respondents, for some reason not disclosed by the evidence, changed their minds, and concluded they did not want to complete the sale; that appellant was at all times ready, willing, and able to close the deal, but that, without fault on his part, he was prevented by respondents' wrongful acts from so doing."

Upon remand, the case was tried before the court without a jury. A judgment in favor of the defendants was made and entered. Plaintiff has again appealed, claiming a loss of profits aggregating about $40,000, the loss of the value of a lease on the property occupied, and a loss of the good will of the business.

It is a primary rule of law that, if one contracts to sell specific personal property to another, and breaches his contract, he is liable in damages. This rule is admitted. The trial court found for the plaintiff in the sum of one dollar as nominal damages.

Both sides seem to be agreed upon this proposition: That the value of the stock of the corporation, Commercial Im-

porting Company (defendants being, in law, the company) is the net value of its property. The defendants have undertaken to meet the presumption of damages flowing from the breach of their contract with testimony tending to show that the property sold was not of the value evidenced by the invoices; that the success of the business had been due to, and would be dependent in the future upon Shaw's personality; that the plaintiff was not possessed of sufficient business ability to successfully maintain himself against the existing competition in the coffee and spice trade in the city of Seattle; and finally, that plaintiff, although the evidence is uncontradicted that he would have been able to pay the price agreed upon, had not sufficient capital to maintain the business in a profitable way.

It seems to us that these defenses are not sound, either in fact or in law. Having denied plaintiff the opportunity to offer the goods for sale, defendants cannot be heard to say that they could not have been sold at a profit. The goods were mostly staple articles of daily consumption by the great mass of the American people. They have a place in the market and are in constant demand, and we may judicially notice the fact that there is a difference between the wholesale price of such goods and the price on re-sale in the market contemplated by the parties. Defendant seems to proceed upon the assumption that, inasmuch as he has testified that the goods were not worth the invoice price, or, as his counsel puts it, defendants made a good bargain for themselves, there can be no recovery. To so hold would be to assume that plaintiff contracted for the goods intending to leave them upon the shelf. The mere statement of this premise refutes the argument of the defendants in this respect.

It is fundamental that one who buys to re-sell is entitled, upon a breach of the contract, to recover for the loss of his bargain. This court has so held. (*Lilly v. Lilly, Bogardus & Co.*, 36 Wash. 337, 81 Pac. 852; *Sedro Veneer Co. v. Kwapil*, 62 Wash. 385, 113 Pac. 1100; 3 Sutherland, Dam-

ages, 3d ed., § 662; 35 Cyc. 644), the only limitation being that the damages were within the contemplation of the parties, and can be estimated with reasonable certainty. This rule is peculiarly pertinent here, for plaintiff was buying an established business and not goods merely.

"Where the plaintiff purchased, not merely the good-will attached to the premises transferred, but the property and good-will of the business and the exclusive right to use a trade-mark, it was held that proof of the damages resulting from a breach need not be made by showing specific loss of business and profits as of a bill of particulars of his injuries. In such a case the wrong done by the vendor is a willful one, and the case is such as he has chosen to make it; hence his is the loss which may arise from the uncertainty pertaining to the nature of it and the difficulty of accurately estimating the results of his own wrongful act." 3 Sutherland, Damages (3d ed.), § 658.

The record in this case is long and very much involved. Plaintiff contracted to buy the stock of goods belonging to the defendants. He bought a waygoing business. It was understood by the parties that the business would continue. The contract price of the goods was the wholesale or invoice price. It was understood and within the contemplation of the parties that the goods so purchased would be sold in the retail market. The measure of plaintiff's damage, then, is the difference between the price contracted to be paid and the retail price at the time of the breach. Taking the case by its four corners, the evidence sustains us in saying that the business was well established and a profitable one; that defendants, having breached their contract, cannot be heard to say that plaintiff could not have disposed of the goods at a profit; that a fair net profit upon the goods sold would have been not less than fifteen per cent of the total value, or $6,755.20. We therefore find that plaintiff is entitled to recover this sum, with interest at the legal rate from the time of the breach.

Plaintiff is not entitled to recover for the loss of the lease. It was agreed that the value of the lease should be settled by arbitration. This was done. Plaintiff would have had to pay the amount fixed by the arbitrator, and is therefore not entitled to recover any difference between the rent reserved and the amount so fixed. He has not suffered any loss on this item.

In respect to the claim for damages for loss of the good will of the business, we deem it sufficient to say that, in allowing a profit for selling the goods at retail, the good will of the business has to that extent been marketed. In view of this fact, and the further fact that the respondent only agreed to remain out of business for a period of two years, the majority of the court are of the opinion that a further allowance in respect to this item would be speculative and conjectural.

This decision will be unsatisfactory to both the plaintiff and defendants. This case has been long continued, and it has been extremely difficult. We have, in some degree, yielded our judgment, one to the other, believing that, in the main, justice will be done by ending this piece of litigation.