[No. 18444. Department Two.  April 8, 1924.]

L. M. KEEN, *Respondent*, v. C. O. SWANSON, *Appellant*.[1]

CUSTOM AND USAGES (4)—SALES (152)—ACTION FOR BREACH—
PROOF OF CUSTOM—EVIDENCE—ADMISSIBILITY. It is inadmissible to
prove a custom antagonistic to the full, complete and unambiguous
terms of a contract for the sale of clams.

SALES (154)—BREACH OF CONTRACT—MEASURE OF DAMAGES.  On
the sale of clams with knowledge that they were bought for resale,
the measure of damages for non-delivery is the expected profits, if
shown with sufficient certainty by contracts of sale at specified
prices, especially where they could not be obtained on the market.

Appeal from a judgment of the superior court for
Grays Harbor county, Sheeks, J., entered July 21, 1923,
upon findings in favor of the plaintiff, in an action on
contract, tried to the court.  Reversed.

*James P. H. Callahan*, for appellant.

BRIDGES, J.—Suit for damages resulting from a
breach of contract to deliver clams.  On March 7, 1922,
the parties to this action entered into a written con-
tract by the terms of which appellant sold and the re-
spondent bought one thousand cases of minced razor
clams, at $1.45 per dozen cans, or $5.80 per case, to be
delivered June 1, 1922, and an additional 1,000 cases at
the same price, to be delivered July 1, 1922.  Delivery
was to be made on board cars at some point on Grays
Harbor for shipment to Portland, Oregon, which was
the place of business of the respondent; "shipment to
be made as soon as practicable after the canning sea-
son and in event of short crop, fire or other unavoidable
cause preventing seller from executing order in full,
delivery or shipment to be made pro rata with other
orders that may be entered."  None of the clams were
delivered.

[1]Reported in 224 Pac. 574.

A careful reading of the testimony convinces us of the correctness of the trial court's findings of fact, which were, in substance, that, without lawful excuse and without any crop shortage, fire or other unavoidable cause, the appellant failed to deliver any of the clams; that the respondent was a jobber doing business in Portland, Oregon, and purchased these clams for the purpose of resale, of which facts the appellant had knowledge at the time of making the contract; that none of the clams having been delivered on the date provided for in the contract, the appellant orally gave the respondent to understand that deliveries would be made, although somewhat later than the date fixed in the written contract, and that respondent relied upon these promises for delivery; that, shortly after he had entered into the contract with appellant, respondent resold the clams he had purchased from appellant, and that, after the execution of the contract, the price of clams materially advanced, until about the time this suit was brought (in October, 1922), the market value was approximately $9.40 a case; that, after the breach, respondent was unable to obtain clams to take the place of those purchased of appellant. The damages sought by respondent was the difference between the price he had agreed to pay and the market price at the time of the breach of the contract by appellant. The trial court awarded respondent a judgment for $4,500.

We have not had the benefit of any brief. or oral argument by respondent, nor has he in any way appeared in this court.

The appellant first contends that, under a custom alleged to have grown up in the clam business, the respondent was not entitled to recover anything. He offered to prove that it was the custom of buyers and brokers of clams to go into the community where clams were packed, prior to the packing season, and book

orders largely in excess of any anticipated pack, and that deliveries would be made pro rata, and that if the packer, for any reason, should be unable to deliver, he would be excused, and the purchaser would not be heard to contend that there was a breach of the contract.

The trial court refused to receive this class of testimony, and, we think, correctly. Here was a written contract—full and complete in all respects, and with nothing obscure or uncertain about it. It has never been the rule that a custom may be shown which is antagonistic or contrary to the clear and full terms of a contract. The correct rule is very clearly stated by Judge White, in the case of *Williams v. Ninemeyer*, 23 Wash. 393, 63 Pac. 534, where, speaking for the court, he says:

"It is only where a contract is silent in some particular, or is ambiguous that proof of custom is admissible, and such proof is then admissible only for the purpose of finding out what the contract really was, and not to overturn it. Proof of custom is received in such cases upon the assumption that, as to those matters not covered by express stipulations in the agreement, the parties are presumed to have made their contract with reference to established custom and usage of that place; and these the law will incorporate into the contract, in order to explain or complete it. But it is always within the power of the parties to exclude custom from their dealings by express agreement, as was done in this case."

Under the rule thus announced, proof of any custom would be wholly incompetent. The parties having made a contract which is full, complete, clear and unambiguous, must abide by it, without reference to custom.

While the testimony shows that the appellant orally promised to deliver the clams in question at a period

subsequent to the time fixed by the written contract, he now contends that, under the statute of frauds, § 5826, Rem. Comp. Stat. [P. C. § 7746], if there was a breach of the contract it must have been as of the dates provided in the written contract for delivery, because any oral agreement for subsequent delivery would be void. Under the disposition we intend to make of this case, it will not be necessary for us to discuss this question.

It seems to have been respondent's theory that his measure of damage was the difference between the price he agreed to pay and the market price as of the time delivery was to be made. We think such would not be the correct measure of damages under the facts of this case. The respondent testified that at once after buying the clams he resold them. The record of his cross-examination shows the following:

"Q. That was these 2,000 cases you are talking about, that you sold to forty or fifty different people? A. Yes. Q. And what price did you sell them at? A. I had one order for 750 cases sold at $1.50 f. o. b. cannery and the other orders ran from $1.60 to $1.65. Q. That is, 750 cases at $1.50 and the other 1,250 at what—? A. $1.60 or $1.65. . . . Q. Then you would say that 2,000 cases were immediately contracted for at the price which you have stated? A. Yes."

The testimony further shows that the respondent was unable to fill all of his contracts because of appellant's breach.

Compensation is the rule of damages for breach of a contract. It is the general rule, also, that where the breach consists in the failure of the seller to deliver goods sold, the measure of damage is ordinarily the difference between the contract price and the market price of the goods at the time and place of delivery, provided there is a market for such goods. 35 Cyc. 633. But where goods are sold to a purchaser who in-

tends to resell them, and such fact is known to the seller and such resale is made, the measure of damage for non-delivery is the expected profits, if they can be proved with sufficient certainty; and especially is this the case where the goods cannot be otherwise obtained in the market. 35 Cyc. 644. These rules find support in the following cases from this court: *Lilly v. Lilly, Bogardus & Co.*, 39 Wash. 337, 81 Pac. 852; *Sedro Veneer Co. v. Kwapil*, 62 Wash. 385, 113 Pac. 1100; *Sussman v. Mitsui & Co.*, 114 Wash. 294, 195 Pac. 3.

Under the testimony in this case, if the appellant had delivered the clams he sold, the respondent, under his contracts of sale with his customers, would have made a profit of twenty cents per case on 750 cases, or $150, and eighty cents per case on 1,250 cases, or $1,000, making a total of $1,150. This sum, it seems to us, necessarily represents the respondent's loss of profits and is a correct measure of his damages. It is true respondent might have had a special damage by reason of the persons to whom he sold holding him liable for their losses, but he has neither plead nor sought to recover any damages of this character. Appellant claims that the freight from Grays Harbor to Portland should be deducted from the profits. It would not be just to do this, because the testimony we have quoted shows that respondent had sold the clams f. o. b. cars, Grays Harbor.

Under the facts of this case, the measure of damages contended for by the appellant, to wit, the difference between the price agreed to be paid and the market price, would be inequitable and unjust, in that, if the market price were greater than the contract price, the respondent might recover more than he would have made had the contract been complied with, and if the market price were less than the contract price, he would thereby be deprived of the profits which he

would have made and which were in contemplation of the parties when the original contract was executed. This question is very fully discussed in our case of *Sedro Veneer Co. v. Kwapil, supra.* There the appellant agreed to sell and deliver to the respondent, a broker, a certain number of egg case shooks. At once after entering into the contract the jobber resold the shooks at a profit. The manufacturer failed to deliver the shooks, and we held that, under these circumstances, the jobber's measure of damages was the loss of his profits, and not the difference between the contract price and the market price.

The trial court may have intended to adopt the rule we have announced, for in one of his findings he stated that the damages which respondent was entitled to recover were $4,500, whether his loss "is figured as the difference between the contract price and the market value of said clams . . . or whether said damage is figured as loss of profits." But the amount of the judgment actually entered seems to have been based upon the idea that the correct measure of damage was the difference between the contract price and the market value.

The judgment is reversed, and the cause remanded with instructions to enter judgment in favor of the respondent in the sum of $1,150.

MAIN, C. J., FULLERTON, PEMBERTON, and MITCHELL, JJ., concur.