## Elder v. Florsheim Shoe Company.

(Decided June 9, 1925.)

## Appeal from Marion Circuit Court.

1. Sales—Verdict Properly Directed for Defendant in Purchaser's Action for Damages for Breach of Contract in Sales of Shoes.—In purchaser's action for damages for breach of contract to deliver shoes sold, court properly directed verdict for defendant, where plaintiff failed to prove any material damage by reason of breach alleged.

2. Sales—Burden on Purchaser in Action for Damages for Seller's Breach of Contract to Prove His Damages.—In purchaser's action for damages for breach of contract to deliver shoes sold, burden was on purchaser to show that he had market for shoes, or that he could have sold them at profit, had they been delivered, and, if at a profit, amount thereof.

3. Sales—Measure of Damages for Failure to Deliver, where Sale is of Ordinary Articles which Can be Purchased in Convenient Market, Stated.—Where sale is of ordinary articles of merchandise, which can be purchased in convenient market, measure of damages for failure to deliver is difference between contract price and market price of same or like goods at time and place of delivery.

4. Sales—Measure of Damages for Breach of Contract, where Sale is of Manufactured Articles of Special Brand Ordinarily on Sale, Stated.—If sale is of manufactured articles of special brand ordinarily on sale, but at time of refusal to deliver cannot be found or produced in open market, recovery for breach of contract is measured by expected profits where profits were fairly within contemplation of parties.

5. Sales—When Parties Presumed to Anticipate a Resale, and that Profits would be Made, Stated.—If purchaser, by exercise of reasonable diligence, be unable to purchase similar goods in the markets, and seller at time of acceptance of order knew that

purchaser expected and intended to resell goods at a profit, both parties must be held to have anticipated that a resale would take place, and that profits would be made.

6. Sales—Measure of Damages for Breach of Contract, where Seller Knew that Purchaser Intended to Resell Goods, Stated.—Where purchaser, by exercise of reasonable diligence, is unable to purchase similar goods in market, and seller, when accepting order, knew that purchaser expected and intended to resell goods at profit, measure of damages for breach of contract is difference between contract price, plus freight and other expenses of delivery of the goods, and price at which they could have been sold by purchaser exercising reasonable diligence.

7. Appeal and Error—Plaintiff Not Entitled to Reversal of Directed Verdict Merely Because Entitled to go to Jury on Question of Nominal Damages.—In purchaser's action for damages for breach of contract in sales of shoes, in which court directed verdict for defendant, purchaser was not entitled to a reversal merely because he was entitled to go to jury on question of nominal damages.

PROCTOR K. McELROY for appellant.

W. H. SPRAGENS for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Appellant, Elder, a retail merchant of Lebanon, Kentucky, instituted this action in the Marion circuit court against the Florsheim Shoe Company, incorporated, wholesale shoe dealers of Chicago, to recover damages for breach of contract arising out of the refusal of the shoe company to ship and deliver to appellant, Elder, at Lebanon, two or more quantities of shoes ordered by him from the company through its salesman, in February and May, respectively, 1919. The company defended on the ground that it did not accept orders of Elder sent in by its traveling salesman because Elder had not furnished a financial statement showing his responsibility, at least one satisfactory to the company, and had in the past proved slow in paying for goods sold and delivered by the company to him. It also contended it was unable to ship goods because of a strike at its shoe factory in Chicago which prevented it making the shoes ordered, the strike being a matter over which it had no control. After issue joined, the case was called for trial and a jury empaneled, appellant, Elder, offered himself as a witness in his own behalf. He testified he was engaged in the

mercantile business at Lebanon and had been for some time previous to the commencement of the action; that he was acquainted with L. B. Baynham, traveling salesman of the appellee company, and that Baynham was the company's regular representative in the Lebanon territory in 1919; that on or about the 5th of February, 1919, he called at the store of appellee, Elder, for the purpose of soliciting orders for shoes for his company; that appellant, Elder, gave him an order for 81 pairs; that the salesman left with Elder a copy of the order and this copy of the order is filed with the evidence and made a part thereof. To prove that the order was accepted by the shoe company appellant, Elder, was asked if he received any letters from the company to that effect. To which he answered he had but that he had lost one of the letters containing the acceptance of the order, and when asked the substance of the letter he gave it as follows:

"They stated they were having a strike but they hoped to get it settled within a few days and just as soon as they did they would ship my order as soon as they could get it ready."

He further testified that later he gave Mr. Baynham, as agent for the shoe company, two other orders. He then stated that part of the order given by him on February 5th, had been shipped by the company, although the balance of it had been withheld. The part shipped consisted of two pairs of shoes, but on cross-examination he admitted the two pairs of shoes were special orders that might or might not have been included in the order given on February 5th, and when asked to point out the items on the order of February 5th which covered the two pairs of shoes shipped, he was unable to do so. The orders made in May, according to his testimony, included 215 pairs of shoes. He further testified that at the time he gave the orders for May, 1919, he had practically, if not entirely, paid the full amount of previous bills to the company. However, he admitted he was indebted to the company for the special orders of shoes which had been shipped, and admitted there was a controversy about an interest charge of $5.50. He was asked, "Q. How much advance was there on the shoes you ordered from the shoe company during 1919, from February on until September, 1919? A. Well, from February on until September, I would say," (objection by defendant) "Yes,

sir, from four to six dollars a pair." He further stated that the price of shoes started out in February at $7.90 and on September 13th, 1919, they were $14.80 a pair. But on further examination he stated that he acquired his information concerning the advance in the price of shoes solely from Baynham, traveling salesman of the appellee shoe company, and this the court ruled incompetent. During his examination he was asked: "Q. State whether or not there was an advance in shoes in the year 1919?" (Over the objection of the company he answered) "There had been a little tendency to advance in a way in 1918 until the spring of 1919, so that along in the middle of 1919 everything went wild; just simply advanced head over heels. Shoes advanced very much, so Mr. Baynham told me." Baynham was the salesman for the appellee company. Later he was asked: "As to the advance you have spoken of, where did you get that information? Was that information given to you by other parties as to the advance? A. Given to me by their salesman. Q. You don't know anything of your own knowledge? A. I am going on what Mr. Baynham told me."

Filed with his evidence are a number of letters received by appellant, Elder, from the shoe company, the tenor of which is that the company was unable to ship the shoes on account of the strike then prevailing at its factory and that appellant had failed to furnish a financial statement as requested by the company. He also filed copies of letters written by him to the company in response to its letters, in which he insisted upon the shipment of the shoes but he admits he failed to furnish the financial statement at the time it was requested. The letters of the company, however, rather intimate that appellant's orders had been accepted but that they were unable to fill them because of labor troubles at the factory and that when the labor troubles were settled the shoes would be shipped.

In view of the fact the shoes were ordered in February for early spring delivery and in May for early fall delivery, and that the shoe company failed to definitely decline to accept the orders until several months after they were given and received by it, we are inclined to the opinion that appellant, Elder, was entitled to treat the orders as having been accepted by the shoe company.

The evidence upon this point, however, is not altogether satisfactory.

We are, however, of opinion that the trial court properly directed a verdict for the shoe company upon another ground, and that is, that appellant, Elder, failed to prove any material damage, if indeed he proved any damage by reason of the breach of the contract, if it were breached. While there was some evidence that the price of shoes had advanced after the order was given by appellant, Elder, to the agent of the shoe company, there is absolutely no evidence tending to show that appellant had a market for the shoes, or that he could have sold them had they been delivered to him, or that if he could have sold them he would have sold them at a profit and if at a profit, how much. The burden was upon appellant, Elder, to prove these facts.

While there is some slight evidence tending to show there was a breach of contract to ship and deliver the shoes purchased by appellant, Elder, there is no evidence or proof tending to show the price at which the shoes could or would have been sold at his store had he received them, or the profit which he could and would have realized from a resale of the shoes, or that he could or would have made a profit on the shoes had he received them according to his purchase.

Before turning the witness over for cross-examination, counsel for appellant Elder stated: "Mr. Elder, as I understand from you, you are claiming damages on the shoes at four dollars per pair?" To which Elder answered, "Yes, sir." The examination was there closed and the witness was then passed over for cross-examination. There is no explanation by the witness as to how and why he "claims damages on the shoes at four dollars per pair." Neither is there a statement he had been damaged or had lost profit on the shoes to the amount of four dollars ($4.00) per pair, but merely a statement that he claims damages to that extent. There is a very great difference between a claim for damages and the existence of such damages in proving a case. Very frequently large claims are made when evidence is wholly wanting That seems to be the case here.

The rule is that where the sale is of ordinary articles of merchandise which can be purchased in the same or a convenient market, the measure of damages for failure to deliver is the difference between the contract price

and the market price of the same, or like goods, at the time and place of delivery. If the sale is of manufactured articles of a special brand, ordinarily found on sale, but at the time of the refusal to deliver, cannot be found or produced in open market, the recovery for the breach of contract is measured by the expected profits where profits were fairly within the contemplation of the parties. If the purchaser, by the exercise of reasonable diligence, be unable to purchase similar goods in the markets and the seller at the time of the acceptance of the order knew that the purchaser expected and intended to resell the goods at a profit, then both parties must be held to have anticipated that a resale would take place and that profits would be made. In such case the measure of damages is the difference between the contract price, plus freight and other expenses of delivery of the goods, and the price at which they could have been sold by the purchaser, exercising reasonable diligence, at his place of business. Cordage Company v. Luthy & Company, 98 Ky. 583.

In the case of Woerman v. McKinney-Guerdy Co., 174 Ky. 521, the measure of damages for failure to deliver goods of the kind involved in this case is held to be the difference between the contract price and the price at which goods of like character could have been obtained at the time of the purchase, or if they could not be obtained in the market, the difference between the contract price and the price at which goods of like character could have been obtained at the time of the breach; or, if they could not be obtained in the market, the difference between the contract price and what the goods would have been worth to the buyer at the time he should have received them. In that case it was said the market price is to be ascertained as of the place of delivery and that the measure of damages for the failure to deliver the goods is the difference between the contract price and the market price at which the goods could be resold, less the cost of transportation. The recovery is governed by the profits which the purchaser would have realized from a resale of the goods, provided he was unable after the exercise of reasonable diligence to secure other goods of like character in their place. Logmountain Coal Co. v. White Oak Coal Co., 163 Ky. 842; Bates Shoe Co. v. Norton Iron Works, 113 Ky. 372.

It is said for appellant, however, that he was entitled to go to the jury because he had shown nominal damages, at least. We rather agree with him in this contention and feel that the court should have instructed the jury to award him nominal damages, but we have often held that an appellant is not entitled under the maximum *"De minimis non curat lex"* to a reversal of the judgment merely because he is entitled to nominal damages, and we have frequently refused to reverse judgments upon this ground. We must adhere to that rule. Stone v. Adams Express Company (not officially reported), 122 S. W. 20; White v. Grazier (not officially reported), 106 S. W. 289, 32 Ky. Law Rep. 918; Morgan v. Lexington Herald Co., 138 Ky. 637; Vanzant v. Ashland Water Works Company, 200 Ky. 586.

Judgment affirmed.