## Linville v. Louisville & Nashville Railroad Company.

(Decided May 15, 1931.)

B. B. GOLDEN and JAMES S. GOLDEN for appellant.

LOW & BRYANT, A. M. WARREN and ADRIAN WEINSTEIN for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

James Linville and his four children, who are the joint owners of a lot in Four Mile, a small village in Bell county, brought this action against the Louisville & Nashville Railroad Company to recover damages for the alleged closing of a road leading to plaintiffs' property and the partial destruction of a stone wall which stands on the line between their property and the railroad right of way. The lot is described as follows in plaintiffs' petition:

"Beginning at where the county road formerly crosses the Louisville & Nashville Railroad, thence with the right of way of said railroad to a stake at

the corner of a tract deeded by John Hendrickson to H. K. Hendrickson, thence a northerly course to a stake in the state road opposite John Hendrickson's barn, thence with the said state road crossing a drain to the beginning containing one half of an acre and being known as the A. M. Hendrickson house and lot.

On the trial, the lower court at the conclusion of all the evidence sustained the defendant's motion for a directed verdict in its favor, and from the judgment entered thereon James Linville has appealed.

The Linville lot adjoins the railroad right of way, and, when the railroad was originally constructed, it crossed a public road known as the Wilderness road. The lot now owned by plaintiffs then abutted on this road. At or about the time the railroad was constructed, the crossing was moved south a short distance, and the county constructed a road adjoining the railroad right of way from the old Wilderness road to a point where the new crossing was established. The railroad right of way was not fenced, and the traveling public did not confine themselves to the road, but also used the adjoining right of way in traveling from the crossing to the Wilderness road, and, in order to reach a store located on plaintiffs' lot, they crossed the Wilderness road and traveled a short distance on the defendant's right of way. This condition existed for more than thirty years.

In 1923 the railroad was double-tracked, and, with the consent of the county authorities, the appellee constructed an underpass 183 feet south of the old crossing. Its right of way was fenced, and consequently the public could no longer use it to get to the store on plaintiffs' lot.

Appellant contends that appellee in making excavations on its right of way for the purpose of laying an additional track and in fencing its right of way, destroyed his way of ingress and egress to and from his property. He claims that, when the railroad was originally constructed, there was an understanding between it and plaintiffs' predecessors in title that a road from the new crossing was to be constructed and maintained by the railroad to their property, but there is no competent evidence that any such agreement was made, nor did the use of appellee's right of way by the owner of

the adjoining lot, or the public generally, ripen into a right by mere lapse of time.

This precise question was before this court in Chesapeake & Ohio Railway Co. v. Blankenship, 158 Ky. 270, 164 S. W. 943, 944, and it was there said: "The trial court properly withheld from the consideration of the jury any question of damages claimed by appellee to have resulted to his lot by the elevation of the land in constructing the side track, although it prevented ingress or egress to and from the premises where it adjoined the right of way. There can be no question but that the side track was built upon appellant's own right of way, which, where it abutted appellee's lot, extended to the fence thereof. The regular entrance to appellee's lot is from Lock street; and if, as claimed by him, it had been his custom before the construction of the side track to walk and drive upon appellant's right of way in entering and leaving his premises, and the public generally had used the right of way adjoining his premises, such user was a permissive one and did not ripen into a right by mere lapse of time, therefore the interference with this user caused by the construction of the side track did not confer any right of action upon appellee."

The evidence is clear that there was no road, public or private, over the railroad right of way adjoining plaintiffs' lot, and that such use as was made of the right of way by the owners of the abutting lot and the public was merely permissive.

It appears that the road leading from the old Wilderness road to the underpass is narrower than it once was because the fence erected by appellee along its right of way incloses part of the land formerly used by the traveling public. That the fence is on the line of the right of way is not disputed. The construction of the fence confined travelers to the county road and prevented trespassing on appellee's property. There also is a steep grade on this road. It is shown, however, that automobiles and other vehicles can be operated over it, and that a great number of people who live on the old Wilderness road and up Four Mile creek can and do use it. It is a county road maintained by the county, and the evidence fails to show such an obstruction of it by the railroad company as to give rise to a cause of action in favor of plaintiffs.

There was some proof that appellee in grading on its right of way adjoining plaintiffs' property damaged a stone wall located on their lot, and it is argued that

146

they at least are entitled to damages for this trespass, and that therefore the trial court erred in giving a peremptory instruction to find for the railroad company. The difficulty with this contention is that plaintiffs failed to introduce any evidence as to the value of the wall, the amount of the damages, or the reasonable cost of repairs. There was no evidence upon which the jury could return a verdict for more than nominal damages, and a judgment will not be reversed where only nominal damages are authorized. Elder v. Florsheim Shoe Co., 209 Ky. 509, 273 S. W. 60; Vansant v. Ashland Water Works Co., 200 Ky. 586, 255 S. W. 132; Morgan v. Lexington Herald Co., 138 Ky. 637, 128 S. W. 1064.

The judgment is affirmed.