[No. 32074. Department One. August 7, 1952.]

HILL'S, INC., *Respondent*, v. WILLIAM B. KESSLER, INC.,
*Appellant.*[1]

*Alexander Wiley,* for appellant.

*Hall, Cole & Lawrence* and *Stanley F. Atwood,* for respondent.

[1]Reported in 246 P. (2d) 1099.

MALLERY, J.—The plaintiff, Hill's, Inc., ordered thirty-four men's suits from the defendant, using a printed form supplied by defendant through its salesman. The printed form provided that the order would not become a binding contract until it had been accepted by an authorized officer of the defendant at its office in Hammonton, New Jersey.

The defendant's salesman procured the order on May 16, 1950, and on May 23, 1950, the defendant, by form letter, advised the plaintiff that "You may be assured of our very best attention to this order." What occurred next is shown by the trial court's finding of fact:

". . . but notwithstanding, on or about July 18, 1950, defendant intentionally and deliberately, at the instigation of a large retail store selling defendant's clothing in the downtown Seattle area, wrongfully cancelled said order and breached its agreement with plaintiff to deliver said suits as ordered, or at all. That at the time defendant cancelled said order and breached its agreement, the period for placing orders for delivery of fall suits had passed, and it was impossible for plaintiff to thereafter procure comparable suits from any other source to meet its fall trade. . . ."

Thereupon, plaintiff brought this action for loss of profits in the amount of a 66⅔ per cent markup aggregating $815.83. From a judgment in favor of the plaintiff, the defendant appeals.

The defendant contends that its letter of May 23, 1950, in which it said "You may be assured of our very best attention to this order," was not an acceptance of the plaintiff's order.

In *Bauman v. McManus*, 75 Kan. 106, 89 Pac. 15, the court said:

"The promise that the order shall receive prompt and *careful* attention seems to imply something more than that the manufacturers will quickly and cautiously investigate the advisability of accepting it. The care they might expend in that direction—in looking up the defendants' financial standing, for instance—is not presumably a matter in which any one but themselves would be greatly interested. The engagement to use care seems more naturally to relate to the manner of filling the order than to the settling of a doubt whether to fill it at all. The expression of thanks for the

favor has some tendency in the same direction. We incline strongly to the opinion that the letter, standing by itself, was as effectual to close a contract as though in set phrase it had said that the goods would be shipped; that to permit any other construction to be placed upon it would be to countenance the studied use of equivocal expressions, with a set purpose, if an advantage may thereby be derived, to keep the word of promise to the ear and break it to the hope."

■ Notwithstanding that the *Bauman* case is exactly in point, it is not necessary to rely upon it exclusively, for the reason that the intention of the defendant to accept the offer is shown by subsequent correspondence with the plaintiff in this case.

On July 18, 1950, defendant wrote plaintiff the following letter:

"This is to inform you we find it will be impossible to ship the Fall order which you placed with Mr. Jacobus on May 16, order No. 8585. We dislike very much having to inform you of this, but we trust that you will understand when we say that because of previous commitments to other stores in town it is necessary to *cancel* this order.

"We are certainly sincerely sorry if this action on our part inconveniences you at all." (Italics ours.)

This letter recognizes the existence of a contract, which it undertakes to cancel.

■ The defendant contends that the correspondence in this case was not signed by an authorized officer of the defendant corporation. The treasurer of the corporation testified that Glenda Fitting was a clerk in the office; was not an officer of the corporation; was not authorized to accept orders; and that the only persons who were authorized to accept orders were the president, the secretary, and the treasurer.

From a large amount of correspondence in this record, all signed by Glenda Fitting, which the trial court examined, it was justified in not believing the foregoing testimony. The testimony does not go so far as to make out that Glenda Fitting intruded herself into the affairs of the defendant corporation without its knowledge or over its protest.

In such a case,

". . . where a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence conversant with business usages and the nature of the particular business is justified in assuming that such agent has authority to perform a particular act and deals with the agent upon that assumption, the principal is estopped as against such third person from denying the agent's authority; he will not be permitted to prove that the agent's authority was, in fact, less extensive than that with which he apparently was clothed." 2 Am. Jur. 86, Agency, § 104.

■ The defendant contends that the court erred in allowing loss of profits as the measure of damages in this case, and complains that the plaintiff made no effort to procure similar suits elsewhere by way of mitigating the damages. The plaintiff, however, showed that the cost of going east to fill such an order would have been greater than his lost profits, and, hence, would not have been justified.

We think that the defendant understood that the plaintiff was purchasing the thirty-four suits for resale at a 66⅔ per cent markup; that the order was specifically placed for the plaintiff's fall trade; and that the suits, of the defendant, were of a quality that was unobtainable in the west. Loss of profits, in such a case, is a correct measure of damages. *Bluegrass Cordage Co. v. Luthy & Co.*, 98 Ky. 583, 33 S. W. 835; *Elder v. Florsheim Shoe Co.*, 209 Ky. 509, 273 S. W. 60; *Kelley, Maus & Co. v. LaCrosse Carriage Co.*, 120 Wis. 84, 97 N. W. 674; *Northwest Auto Co. v. Harmon*, 250 Fed. 832; *Lilly v. Lilly, Bogardus & Co.*, 39 Wash. 337, 81 Pac. 852; *Baker v. Shaw*, 78 Wash. 233, 138 Pac. 888; *Keen v. Swanson*, 129 Wash. 269, 224 Pac. 574; and 88 A. L. R. 1472 to 1475.

The judgment is affirmed.

SCHWELLENBACH, C. J., GRADY, and WEAVER, JJ., concur.

DONWORTH, J. (concurring in the result)—I concur in the affirmance of the judgment appealed from solely for the reason that the letter of July 18, 1950, constituted a recognition by appellant of the existence of a contract between the parties, the terms of which were set forth in the order given by respondent to appellant's representative on May 16, 1950.