## Woerman v. McKinney-Guedry Company.

(Decided March 9, 1917.)

### Appeal from McCracken Circuit Court.

1. Damages—Measure of Damages—Breach of Contract.—Where a breach of a contract for the sale of personal property consists of the failure of the seller to make a delivery of the property, the measure of damages is ordinarily the difference between the contract price and the market price at the time and place agreed upon in the contract for the delivery.

2. Damages—Failure to Deliver Goods Sold—Measure of Damages.— When it is in the contemplation of the parties to a sale of personal property that the goods are purchased for resale at a designated place, then the measure of damages for a failure to deliver the goods is the difference between the contract price and the market price, at the place of resale, less the costs of transportation, if there is no market in which similar goods can be purchased, for transportation to the place of destination.

3. Damages—Breach of Contract to Deliver Goods.—If there is no market price for an article at the place where it is contracted to be delivered, the true value of the goods at such place may be shown by the best evidence which can be obtained, and to accomplish this, the market prices at other places may be shown,

which, plus the transportation charges, may be considered as a basis for damages for a failure to deliver; or if the places of delivery and destination are different, the market price at the place of destination, less the cost of transportation to the place of destination, may be resorted to to find the market value at the place of delivery.

4. Contracts—Sale of Personal Property—Breach of Contract.—In a contract for a sale of personal property, if the property may be delivered within a certain designated period, at the option of the seller, when he gives notice of his intention not to deliver, is considered as the time of the breach of the contract; but if the property is to be delivered at the option of the buyer, although the seller gives notice of his intention not to deliver, the breach will not be considered as made of that date, but at the time when the delivery should have been made.

EATON & BOYD for appellant.

WHEELER & HUGHES for appellee.

Opinion of the Court by Judge Hurt—Reversing.

This was an action by the appellant, H. A. Woerman, against the appellee, McKinney-Guedry Company. The appellee is a manufacturer of pickles at Paducah, Ky., and the appellant is a wholesale pickle dealer at St. Louis, Mo. In the month of May, 1915, they entered into two contracts, by the one of which appellees sold to appellant two carloads of bulk pickles, and by the other, three carloads of bulk pickles, to be delivered at such times as appellant might designate during the months of October and November. The delivery was to be "free on board" cars at Paducah. The contract fixed the price to be paid for the pickles and provided that appellant was to give to the appellee specifications designating the particular kinds and quantity of pickles to be shipped under the contract, on or before a designated time. The appellant within the time provided for in the contract furnished the bill of particulars or specifications, which were accepted by the appellee, but on the 18th day of October the appellee notified appellant that it would not comply with either of the contracts for the delivery of the pickles. On the day following the appellant proceeded to undertake to buy other pickles of similar quality and kind to supply the places of those which he had contracted with appellee to furnish him, as in the course of his business he had already entered into contracts with other persons, by the terms of which he had contracted to sell and deliver to them the pickles which

he had purchased under the contracts with appellee. It is, however, not alleged or proven that appellee had knowledge of these contracts between appellant and his customers at the time the contracts sued on were made, if such contracts were then in existence. Thereafter the appellant brought this suit, in which he seeks to recover of the appellee the damages which he alleges that he suffered on account of the breach of the contracts. The damages are laid at the sum of $1,215.00. The appellant claimed that he was compelled to and did go into the open market and bought five carloads of pickles of the specifications as furnished to the appellee, to supply the places of those which appellee had sold him, but failed to deliver, but at the time he was forced to make these purchases on account of appellee's breach of the contracts he had with it, that the price of pickles had advanced, and that the market price, which he was compelled to pay for the pickles, was the sum of $1,215.00 in excess of the total price, which under the contracts the appellee had agreed to furnish them. He further claimed, that he purchased the pickles in the market at the lowest price at which he was able to purchase them. The appellee confessed to the making of the contracts, and their terms, and the compliance with them by appellant, and to the breaches of the contracts, but denied that the difference between the contract prices and the market price or value of the pickles at the time of the breaches, or for a reasonable time thereafter amounted to the sum claimed by appellant, or that the difference was more than $663.75, which sum it offered to confess a judgment for in favor of appellant. The offer to confess was not accepted and the issues being completed by the filing of a reply, a jury was waived and the law and facts submitted to the court for its decision. The court adjudged that the appellant's damages amounted to the sum for which appellee had offered to confess a judgment and no more, and rendered a judgment in favor of appellant for that sum, but required him to pay the costs of the action after the offer to confess judgment had been made. The appellant's motion and grounds for a new trial being overruled, he has appealed from the judgment to this court.

The questions for decision are: What is the measure of damages and how shall the damages be ascertained under the particular state of facts proven? For a breach of a contract for the sale of personal property, where the breach consists of the failure of the seller to deliver

the goods, the rule is, that the measure of damages is ordinarily the difference between the contract price and the market price or value at the time and place of the delivery. Miles v. Miller, &c., 12 Bush 134; Parry Mfg. Co. v. Lyon, &c., 111 Ky. 613; Denhardt v. Hurst, 111 Ky. 546; Cole v. Ross, 9 B. M. 393; Caldwell v. Reed, Litt. Sel. Cases 366; Tradewater Coal Co. v. Lee, 68 S. W. 400; Belcher v. Sellars, 43 S. W. 676; Koch v. Godshaw, 12 Bush 318; Yoder v. Allen, 2 Bibb 338; Acme Mills & Elevator Co. v. Johnson, 141 Ky. 718; Stahr v. Hickman Grain Co., 132 Ky. 496; Applegate v. Hogan, 9 B. M. 69; White Oak Coal Co. v. Log Mountain Coal Co., 163 Ky. 824. It was, however, said in Barker & Co. v. Mann, et al., 5 Bush 672, with reference to the measure of damages for a breach of a contract on the part of the seller by a failure to deliver the property, thus:

"It is difficult to lay down any universal rule, for each case must at least to a great extent depend upon its own particular facts. But, when the damages are certain and easily determined, and such as may be reasonably inferred to have been contemplated by the parties, and not merely speculative and contingent, a criterion just and reasonable is arrived at."

It was said in Miles v. Miller, &c., *supra,* with reference to the general rule, which fixes the measure of damages at the difference between the contract price and the market price, at the time and place of delivery:

"This rule is not inexorable and of universal application, as cases might arise in which the circumstances attending them might be well calculated to enhance the damages."

In the same opinion it is further said:

"In actions for breach of contract, where no evil intentions are attributed to the party, and no features of aggravation are manifested, the measure of damages is a question of law, and the law fixes and graduates the compensation to the actual loss sustained."

In 35 Cyc. 642, the text is:

"The theory is that the measure of damages is the difference between the contract price and the price at which the goods could be obtained at the time of the breach, or if they could not be obtained in the market, the difference between the contract price and what the goods would have been worth to the buyer at the time he should have received them."

Exceptions to the general rule, that the market price is to be ascertained as of the place of delivery, arise when it is shown to be in the contemplation of the parties that the goods are purchased for the purpose of a resale at a designated place, and there is no market at which similar goods can be purchased for transportation to that place, when the measure of damages for a failure to deliver the goods will be the difference between the contract price and the market price at the place of the resale, less the costs of transportation; or the profits, which the purchaser would have realized from a resale of the goods, if with reasonable diligence he is unable to secure other goods in their place. White Oak Coal Co. v. Log Mountain Coal Co., 163 Ky. 842; Bates Machine Co. v. Norton Iron Works, 113 Ky. 372; Louisville Packett Co. v. Buttorf, 77 S. W. 920; New Market Co. v. Embry, 48 S. W. 980; Currie Fertilizer Co. v. Krish, 24 R. 2471; Campbellsville Lumber Co. v. Bradlee and Wiggins, 94 Ky. 494.

Another exception to the general rule is, where there is no market price at the place of delivery, then the true value of the goods can be shown by the best evidence which is possible under the facts of the case. To accomplish this purpose, the market price at other places may be shown, which, plus the transportation charges, may be considered as a basis for measuring the damages, or if the place of delivery and the place of destination, are different, the market price at the place of destination, less the expenses of transporting the goods to their destination may be resorted to. Campbellsville Lumber Co. v. Bradlee & Wiggins, *supra;* 35 Cyc. 638. "If the market price in the vicinity of the place of delivery is shown to depend on the market price at a large, well-known and active market, the market price at such place, plus transportation charges, may be considered." 35 Cyc. 638; Sedgwick on Damages, 734. The actual value of the article contracted to be delivered may be proven in the ways above stated as a basis for the computation of damages for failure to deliver it, in place of the market value at the place of delivery. This seems, however, to be in effect the proof of what the market value really is in a place where, on account of there being no active market, its market value cannot be shown by evidence. Hence, it seems that the general rule is, that the market value at the place of delivery must be ascertained as the basis for the computation of damages for the failure to deliver personal property under a contract

of sale, except in cases of the exceptions above mentioned.

All the authorities are to the effect, that the time at which the market or true value of the goods must be ascertained in estimating the damages for a failure to deliver personal property, is the time fixed in the contract for the delivery. If the articles may be delivered under the contract within a designated period at the option of the seller, when he shall give notice of his intention not to deliver them, this will be considered as the time of the breach of the contract, but if the article is to be delivered within a certain period, at the option of the purchaser, although the seller gives notice of his intention not to make the delivery, the market price or value of the article will not be computed as of the date of the notice, but at the time when the delivery should have been made. 35 Cyc. 637. In Stahr v. Hickman Grain Co., 132 Ky. 496, the seller, under the contract, had until the first day of January, 1908, in which to deliver corn, which he had sold, but the purchaser contended that the seller had breached the contract on December 15, 1907, and the court held, that as the seller was at liberty to deliver the corn at any time until the first day of January, it was proper to take into consideration the market price on that date in determining the damages, and approved an instruction to the jury by the trial court to that effect.

In the instant case, the proof shows without contradiction that the appellant received notice from the appellee, that it would not comply with the contract and deliver the pickles, on the 19th day of October. Upon the same day and following the receipt of the notice, the appellant undertook to purchase other pickles to substitute for the ones which he should have received under the contract, and from time to time thereafter purchased as many of the same kinds as he could buy. Purchases were made by him on the 19th, 20th, and 23rd days of October, and on the 4th and 6th of November, and on the 10th of December. It seems to have been satisfactorily proven, that the pickles, which the appellant was compelled to buy to substitute for those which appellee had contracted to deliver to him, but failed to do so, cost him the sum of $1,215.00 more than the ones, which, according to the prices, that appellee had sold to him. It is apparent then, that the judgment which appellant recovered failed to compensate him for the losses, which he sustained by the breaches of the contracts, in the

sum of $551.25, unless he needlessly payed a higher price than the pickles of similar quality and kinds could have been purchased. The appellee, however, insists that the market price at Paducah, on the 18th of October, is the market price, which should be taken for the computation of the damages, and that pickles of similar kinds and quality could have been purchased there on that date at an excess of $663.75 over the contract prices, and that appellant's losses in excess of that amount arose from his failure to purchase the pickles upon the Paducah market. The evidence, however, entirely fails to show that there was any person in Paducah from whom the pickles could have been bought, at any price, on the 18th of October, or thereafter until the first of December, or that any pickles were bought or sold during that period at Paducah. The appellee was the only manufacturer of pickles at that point, and it had refused to comply with its contracts to deliver the pickles to appellant. Its president states that it was dealing in pickles in a very limited way at that time, and was not desiring any business. One car load of pickles had been purchased in the early part of the year, 1915, and the purchasers undertook to sell it at the same price in October, November and December, 1915, but were unable to do so. This price was in accordance with what appellee contends was the market price in Paducah. "One swallow will not make a summer," and much less will the proof of one sale or the price rejected at a proposed sale fix a market price, because there may have been many reasons for the inability to sell one article at the market price or at a less price. The proof does not satisfactorily show that there was a market price for such goods at Paducah at the time of the breaches of the contracts. The witnesses for appellee, in giving the basis for their opinion as to what the market price was in Paducah, say that it is based in part upon quotations, which they had received from other places, one of which was as far away as Michigan. They do not remember, however, from whom they received quotations or the exact time of their receipt. It is evident, that if there was a market value for the goods at Paducah, at the time of the breaches of the contracts, it could be ascertained only by inquiring at neighboring markets. While the contracts provided that the place of delivery should be "free on board" cars at Paducah, they, also, showed that the destination was St. Louis, Mo. The seller knew that the purchaser was engaged in dealing in pickles in

St. Louis, Mo. The parties must have contemplated, in making the contracts, that the pickles were being bought for the purpose of resale in St. Louis. As said in Campbellsville Lumber Co. v. Bradlee & Wiggins, *supra*:

"Therefore, when the vendor knows his chattels are being purchased for resale at a particular place, he should be held to have contemplated as a probable result of his failure or refusal to deliver according to the contract, a recovery by the purchaser of the difference between the contract price and market value at such place of resale, less cost of transportation. . . . ."

Under this rule, the measure of damages, in the instant case, would be the difference between the contract price and the market price at St. Louis, Mo., less the costs of transportation. The most of the pickles purchased by appellant after the appellee notified him that it would not comply with its contracts, were purchased in St. Louis, Mo. None of his purchases were at prices in excess of the St. Louis market. The most of the evidence offered by appellant was upon the subject of the market price at Paducah. The witnesses undertook to fix that price by quoting the Chicago market, and adding the costs of transportation from that place to Paducah. Upon the hypothesis, that there was no market price at Paducah, at the time of the breaches of the contracts, the market price at St. Louis, less the costs of transportation from Paducah to St. Louis, may be resorted to to show the actual value at Paducah, as heretofore stated, to compute the damages. Under the latter rule or the one which prevails when the sale is made in contemplation of a resale of the goods, at a particular place, the market price at St. Louis, at the time of the breaches of the contracts, may be resorted to for the purpose of computing the damages, and in the instant case the result is the same under either rule.

It is contended that the time for ascertaining the market price, as a basis for the computation of damages, must be confined to the 19th day of October, when notice of the intended failure to deliver the goods was given, inasmuch as the price of pickles thereafter advanced during the months of October and November. The contracts provided, as will be remembered, for the delivery of the pickles at the option of the buyer. He had the right to request the delivery of one or more or all of the cars at such times during the period designated in the contract for the delivery, as he chose. At such times, as he requested the delivery, were the times under the

contract, when they ought to have been delivered. The buyer had the right to have the delivery made at any time up to and including the 30th day of November. He was not obliged to attempt to minimize his loss by the purchase of other pickles, instead of the ones he should have received under the contracts, but he was privileged to do so. The measure of damages was the difference between the contract price and the market price of the articles purchased. As the buyer had the option of claiming the delivery as late as the 30th day of November, it was proper to consider the market price of the pickles on that day, in computing the damages. The evidence conclusively shows that the pickles purchased by the appellant to supply the places of those for which he had contracted and failed to receive on account of the breaches by the appellee, were none of them purchased for a price greater than the market price at the time, nor greater than the market price on the 30th day of November, and that they were purchased at the lowest price they could be purchased at any time after October 19th, the price of those purchased on December 10th, as well as the purchases made previous to that time, may be considered along with other evidence of the market price. Applegate v. Hogan, *supra.*

The evidence offered upon the trial amply shows that the appellee sustained damages greatly in excess of the judgment, and the court was in error in assessing the amount of the recovery. The finding that there was a market price for the goods at Paducah, where they could not be obtained, at the time of the breaches of the contracts, was not sustained by the evidence, and hence, a use of it as a basis for the damages to which appellant was entitled was erroneous, and it was likewise error to compute the damages by the difference between the contract price and the market price claimed to exist in Paducah, on October 18th.

It is, therefore, adjudged that the judgment be reversed, and the cause remanded for a new trial, and for proceedings consistent with this opinion.