RENDERED: SEPTEMBER 27, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0448-MR

LEE'S FORD DOCK INC.                                                    APPELLANT


                    APPEAL FROM PULASKI CIRCUIT COURT
v.               HONORABLE KENT HENDRICKSON, JUDGE
                          ACTION NO. 16-CI-00716


WESLEY MORGAN AND TOP
SHELF MARINE SALES, INC.                                              APPELLEES

        AND

NO. 2023-CA-0474-MR

WESLEY MORGAN                                              CROSS-APPELLANT


              CROSS-APPEAL FROM PULASKI CIRCUIT COURT
v.               HONORABLE KENT HENDRICKSON, JUDGE
                          ACTION NO. 16-CI-00716


LEE'S FORD DOCK, INC. AND TOP
SHELF MARINE SALES, INC. D/B/A
BUYABOAT.NET                                              CROSS-APPELLEES

OPINION
AFFIRMING IN PART, REVERSING IN PART, AND REMANDING

** ** ** ** **

BEFORE:  CETRULO, GOODWINE, AND KAREM, JUDGES.

GOODWINE, JUDGE:  Lee's Ford Dock, Inc. ("Lee's Ford") appeals from a judgment of the Pulaski Circuit Court granting summary judgment in part on its counterclaims for moorage fees, slip fees, and brokerage fees and denying part of its claim for moorage fees.  We affirm in part, reverse in part, and remand.

## BACKGROUND

This action arose out of a boat slip moorage lease between Lee's Ford and Wesley Morgan ("Morgan") and an exclusive listing agreement for the sale of Morgan's houseboat between Morgan and Top Shelf Marine Sales, Inc. ("Top Shelf"), which is Lee's Ford's brokerage company.  Both entities are owned by J.D. Hamilton ("Hamilton").  Lee's Ford is a marina located on Lake Cumberland in Pulaski County.  The marina provides boat slip moorage for private individuals to lease, and these lease terms are memorialized in a slip rental agreement signed by each lessee.  The term for each annual contract runs from April 1 to March 31 of the following year.

Morgan is a resident of Madison County and owns a houseboat that measures 112 feet long by 20 feet wide.  On March 24, 2014, Morgan executed a slip rental agreement with Lee's Ford.  According to the 2014 slip agreement

terms, Morgan agreed to pay $6,250 per year for slip A78 from April 1, 2014, through March 31, 2015. Additionally, the slip agreement provides that if a boat owner remains in his slip after the end of the agreement or term and the owner does not renew his slip rental agreement in writing or execute a new similar contract with Lee's Ford, then the boat owner was obligated to pay Lee's Ford's its daily transient rate for slip usage. The daily rate was $1.40 per linear foot of a boat's length.

Morgan's boat remained in the slip after the 2014 agreement expired on March 31, 2015. On June 30, 2015, Lee's Ford notified Morgan that his boat remained in the slip after the 2014 agreement expired without signing a new one. Lee's Ford urged Morgan to sign a new agreement and notified him of its possessory lien rights under the terms of the 2014 agreement and KRS[1] 376.270.

On August 31, 2015, Morgan executed a 2015 slip rental agreement. The same day, Morgan executed an addendum to the 2014 agreement, which incorporated those terms by reference and made it part of the 2015 agreement. The annual rent was $6,500, payable in quarterly installments of $1,625.

Lee's Ford never demanded the transient rate for the period between the expiration of the 2014 agreement and the execution of the 2015 agreement.

_____

[1] Kentucky Revised Statutes.

Said agreement expired on March 31, 2016. Again, Morgan failed to execute a new agreement, and his boat remained in the slip.

Additionally, on March 15, 2015, Morgan signed a listing agreement with Top Shelf, which gave Top Shelf the exclusive right to broker the sale of Morgan's boat. The contract included a provision that entitled Top Shelf to a three percent commission if Morgan sold the boat himself while the contract was in effect.

On July 18, 2016, Morgan wrote a letter to Lee's Ford stating he sold the boat to his friend Chris Girdler on July 16, 2016. Morgan said he agreed with J.D. Hamilton, the owner of Lee's Ford and Top Shelf, that he could keep the boat in the slip until it was sold. Morgan stated the buyer of the boat would move it on July 31, 2016. He included a one-month slip rental of $550 with the letter and asked Lee's Ford to send his final electric bill for July. However, Morgan could not deliver the boat to Girdler to complete the sale because Lee's Ford took a possessory lien on the boat, as discussed below.

On July 20, 2016, Lee's Ford notified Morgan that it was exercising a possessory lien for the daily transient rate from March 31, 2016, through July 20, 2016, and chained the boat to the dock. The slip agreements provide as follows:

> SECURITY INTEREST FOR UNPAID AMOUNTS:
> Owner hereby grants Marina, pursuant to KRS 376.270,
> and/or applicable federal admiralty law, a security
> interest in (and Marina has lien against) the described

boat (and any other boat in the rented slip), her appurtenances and contents, to secure all amounts owed Marina under this Agreement, any and all sums owed by Owner to Marina, including, without limitation, for unpaid sums due for use of moorage facilities or other services, for damage caused or contributed to by the described boat or by Owner to any property of Marina or any other person. Marina may exercise any and all remedies set forth in paragraph 14 below and as otherwise available under state and federal law, including the Uniform Commercial Code, in connection with the security interest granted hereby, *including arresting the boat, taking possession of the boat*, and the sale of the boat and its contents.

Record ("R.") at 456.

On August 4, 2016, Morgan filed a complaint alleging Lee's Ford wrongfully asserted a possessory lien on his houseboat and refused to release it to him to move it to another marina. Morgan asked the circuit court to declare the parties' rights and find the amounts he paid satisfied all his obligations to Lee's Ford. Morgan also made claims of trespass to chattels, wrongful conversion, and punitive damages.

Lee's Ford moved to include Top Shelf as an additional party. Then Lee's Ford and Top Shelf filed an answer and counterclaim. In the counterclaim, the defendants alleged Morgan breached a sales contract with Top Shelf and sought a three percent commission fee in damages, breached a contract for dock fees with Lee's Ford, and sought the daily transient rate in damages for the period

between April 1, 2016, and July 20, 2016, and a reasonable rate thereafter. Lee's Ford had a secured interest in the houseboat under KRS 376.272(3).

Ultimately, the parties filed cross-motions for summary judgment. The circuit court granted summary judgment in favor of Lee's Ford and Top Shelf. The court found Morgan liable to Lee's Ford for the transient rate of $17,404.80 between April 1, 2016, and July 20, 2016. The circuit court also found Morgan liable to Top Shelf for three percent of the boat's sale price of $10,500.00 with pre- and post-judgment interest. Finally, the circuit court denied Lee's Ford's claim for a reasonable moorage rate after July 20, 2016.

Morgan filed a motion to alter, amend, or vacate the judgment under CR[2] 59.05. Lee's Ford responded in opposition and, for the first time, argued it was entitled to reasonable moorage fees after July 20, 2016. The circuit court denied Morgan's motion. The court considered Lee's Ford's response an untimely CR 59.05 motion and, thus, denied Lee's Ford's request for moorage fees after July 20, 2016. This appeal and cross-appeal followed.

## ANALYSIS

On appeal, Lee's Ford argues it is entitled to moorage fees after July 20, 2016. On cross-appeal, Morgan argues: (1) he did not owe dockage or moorage fees that entitled Lee's Ford to a possessory lien; (2) he and Hamilton had

---

[2] Kentucky Rules of Civil Procedure.

verbal agreements that modified the written contract; and (3) Top Shelf was not owed a sales commission because it was a one-time listing agreement, and he was not able to complete the sale because he could not deliver the houseboat to the buyer. "Because summary judgments involve no fact finding, this Court will review the circuit court's decision *de novo*." *3D Enterprises Contracting Corp. v. Louisville and Jefferson Cnty. Metropolitan Sewer Dist.*, 174 S.W.3d 440, 445 (Ky. 2005).

First, we address Lee's Ford's and Morgan's arguments regarding the validity of the slip rental agreements, possessory lien, and reasonable moorage fees. The review of these issues requires both statutory and contractual interpretation. Lee's Ford claims it had a valid possessory lien under KRS 376.270 based on the terms of the slip rental agreements, and Morgan disagrees.

Morgan signed Lee's Ford's slip rental agreement, which obligated Morgan to pay the daily transient rate if his boat remained in the slip after the agreement expired and he failed to execute a new one. The agreement also contained a detailed provision citing KRS 376.270 that granted Lee's Ford a security interest in the houseboat for unpaid fees, which included the right to take possession of the boat. Additionally, the agreement expressly states that any modification or pro-rating must be in writing.

> The essential elements of a valid contract are an offer and unequivocal acceptance, a certain and complete recitation

of the material terms, and consideration. Under Kentucky law, the terms of the contract must be sufficiently definite to enable the court to determine the measure of damages in the event of breach.

*University of Kentucky v. Regard*, 670 S.W.3d 903, 912 (Ky. 2023) (citation omitted).

A contract is interpreted by looking solely to the four corners of the agreement. *Baker v. Coombs*, 219 S.W.3d 204, 207 (Ky. App. 2007). Unambiguous terms contained within the contract are interpreted in accordance with their ordinary meaning, "without resort to extrinsic evidence." *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003). The parties agree that the terms of the contract are unambiguous, thus we turn to the four corners of the contract and consider the ordinary meaning of its terms.

*Smith v. Crimson Ridge Development, LLC*, 410 S.W.3d 619, 621 (Ky. App. 2013).

Additionally, a contract can validly incorporate other terms when it is "clear that the parties to the agreement had knowledge of and assented to the incorporated terms. In addition, there must be clear language expressing the incorporation of other terms and conditions." *Regard*, 670 S.W.3d 903 at 912 (internal quotation marks omitted) (quoting *Home Lumber Co. v. Appalachian Reg'l Hosps., Inc.*, 722 S.W.2d 912, 914 (Ky. App. 1987)).

Here, the 2014 and 2015 slip rental agreements were valid. Lee's Ford offered a slip rental, Morgan accepted, and the rental fee was the consideration. The terms of the written contract are clear. There is no dispute

regarding the interpretation of terms contained in the written contract. Instead, Morgan argues that we should look to extrinsic evidence, such as deposition testimony, verbal agreements, and parties' actions, to determine whether the contract was invalid or had been modified. We disagree.

The terms in the four corners of the 2014 and 2015 slip agreements are not disputed. Both parties signed the 2014 slip agreement and the 2015 addendum, which incorporates the terms of the 2014 agreement by reference. The agreement explicitly states that any modification must be in writing. Thus, Morgan's argument that the agreements were modified by action or verbal agreement fails.

Additionally, Morgan argues equitable estoppel bars Lee's Ford from collecting the daily transient rate because it accepted a regular quarterly payment from Morgan after the 2015 agreement expired. To establish an equitable estoppel defense, Morgan would have to prove elements of "both a material misrepresentation" by Lee's Ford and his "reliance" on that misrepresentation:

> The essential elements of equitable estoppel are[:] (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. And, broadly speaking, as related to the party

> claiming the estoppel, the essential elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.

*Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 62 (Ky. 2010).

Morgan's argument fails. Lee's Ford's mere acceptance of a quarterly payment after the slip agreement had lapsed does not amount to a false representation or concealment of material facts. Morgan signed the agreements, so he knew or should have known they allowed Lee's Ford to collect the daily transient rate if the agreements expired without renewal. *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 643 (Ky. App. 2003). Lee's Ford never engaged in any affirmative conduct representing to Morgan that it would not collect the daily transient rate.

Additionally, Morgan argues promissory estoppel bars Lee's Ford's ability to collect the daily transient rate. The following is the doctrine of promissory estoppel: "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires." *Sawyer v. Mills*, 295 S.W.3d 79, 89 (Ky. 2009).

Morgan cannot reasonably rely on Lee's Ford's acceptance of the quarterly payment made after the slip agreement lapsed to stop Lee's Ford from collecting the daily transient rate when he signed written agreements acknowledging that the agreement could only be modified by writing. *See Rivermont Inn, Inc.*, 113 S.W.3d at 642. Thus, based on our review of the agreements and Morgan's arguments that the agreements were unenforceable, we conclude that the 2014 and 2015 slip rental agreements were enforceable.

Next, we turn to whether the circuit court correctly found Lee's Ford's lien was valid under KRS 376.270. Morgan and Lee's Ford had a valid contract that granted Lee's Ford a security interest in the boat for any unpaid amounts, including taking possession of the boat.

KRS 376.270 provides:

> Any person engaged in the business of selling, repairing or furnishing accessories or supplies for motor vehicles shall have a lien on the motor vehicle for the reasonable or agreed charges for repairs, work done or accessories or supplies furnished for the vehicle, and for storing or keeping the vehicle, and may detain any motor vehicle in his possession on which work has been done by him until the reasonable or agreed charge therefor has been paid. The lien shall not be lost by the removal of the motor vehicle from the garage or premises of the person performing labor, repairing or furnishing accessories or supplies therefor, if the lien shall be asserted within six (6) months by filing in the office of the county clerk a statement showing the amount and cost of materials furnished or labor performed on the vehicle. The statement shall be filed in the same manner as

-11-

provided in the case of a mechanic's and materialman's lien, after the removal of the vehicle, unless the owner of the vehicle consents to an additional extension of time, in which event the lien shall extend for the length of time the parties agree upon. The agreement shall be reduced to writing and signed by the parties thereto.

Morgan's houseboat meets the definition of "motor vehicle" in KRS 376.268(2): "'Motor vehicle' includes vessels used or designed for navigation of or operation on waterways, rivers, lakes, and streams, as well as those used or designed for operation on the public highways."

Lee's Ford sells, repairs, and furnishes accessories and supplies through its marina operation, maintenance of boats in the marina, and slip rentals. The statute provides that it shall have a lien for reasonable or agreed charges until they are paid. Thus, Lee's Ford properly held a lien under KRS 376.270 and retained the right to detain the boat until paid.

Having found the possessory lien valid, we must also review whether the circuit court properly limited the amount of daily transient rate owed to the period between the lapse of the agreement on April 1, 2026, through July 20, 2016, when Lee's Ford took possession of the boat. In its counterclaim, Lee's Ford asserts it was owed the daily transient rate for the period between April 1 and July 20 for a total of $17,404.80 "plus a reasonable moorage rate for each day thereafter, plus pre-judgment interest[.]" R. at 19-20. In its motion for summary judgment, Lee's Ford argued it was entitled to summary judgment "for liability

-12-

only" for breach of the 2015 slip rental agreement and requested a bench trial for damages. Lee's Ford consistently argued that the daily transient rate was owed between April 1 and July 20. Still, it never specifically argued it was owed the daily transient rate after that or a reasonable damages amount after July 20 before the circuit court entered summary judgment.

Instead of granting summary judgment on liability only and having a bench trial on damages, the circuit court determined liability and awarded Lee's Ford damages only for the period between April 1 and July 20 and declined to award damages after July 20, 2016. R. at 462. For the first time, in its response to Morgan's motion to alter, amend, or vacate under CR 59.05, Lee's Ford argued it was entitled to a reasonable moorage rate after July 20, 2016. The circuit court treated the response as Lee's Ford's motion to alter, amend, or vacate. The circuit court denied Lee's Ford's motion, deeming it untimely under CR 59.05 as it was filed more than ten days after entry of the judgment.

"[I]t is well-established that '[a] party cannot invoke CR 59.05 to raise arguments and to introduce evidence that should have been presented during the proceedings before the entry of the judgment.'" *Wayne Cnty. Hospital, Inc. v. WellCare Health Insurance Company of Kentucky, Inc.*, 576 S.W.3d 161, 165 (Ky. App. 2018) (quoting *Gullion v. Gullion*, 163 S.W.3d 888, 893 (Ky. 2005)). "An issue not timely raised before the circuit court cannot be considered as a new

-13-

argument before this Court." *Florman v. MEBCO Ltd. Partnership*, 207 S.W.3d 593, 607 (Ky. App. 2006) (quoting *Lawrence v. Risen*, 598 S.W.2d 474, 476 (Ky. App. 1980)). Thus, we affirm the circuit court's denial of moorage fees after July 20, 2016.

Finally, we turn to Morgan's argument that Top Shelf was not owed a sales commission because the contract he signed was a one-time listing agreement, and he could not complete the sale because he could not deliver the houseboat to the buyer. The written contract provides that the contract term began on March 15, 2014, and continued until either the sale of the boat or 90 days after either party gave notice of termination of the contract. The express terms of the contract contradict Morgan's argument; it is an exclusive listing agreement that is not limited to a one-time listing. Based on our review, the sales commission contract was valid and enforceable.

However, Morgan argues Top Shelf is not owed a commission because Morgan could not deliver the houseboat. Morgan refunded the purchase money, and the sale was canceled. Notably, Top Shelf does not address this argument in its combined reply and cross-appellee brief. As a general, well-established principle, "failure of the seller to deliver the goods" is a breach of a sales contract. *Woerman v. McKinney-Guedry Co.*, 174 Ky. 521, 192 S.W. 684 (1917). Thus, we hold the circuit court erred in finding Morgan liable to Top Shelf

-14-

in the amount of $10,500 (3% of the $350,000) sale price with pre- and post-judgment interest because the sale of the boat was never completed. Thus, we reverse this portion of the circuit court's judgment and remand with instructions to enter a new order denying Top Shelf the $10,500 commission fee.

## **CONCLUSION**

For the foregoing reasons, we affirm in part, reverse in part, and remand. On remand, we instruct the circuit court to enter a new summary judgment order denying Top Shelf the commission fee as the sale of the boat was never completed and leave its other rulings intact.

ALL CONCUR.

BRIEFS FOR APPELLANT/
CROSS-APPELLEE LEE'S FORD
DOCK INC.:

Dan Thompson
Somerset, Kentucky

BRIEF FOR APPELLEE/
CROSS-APPELLANT WESLEY
MORGAN:

Rodney G. Davis
Richmond, Kentucky